## JOSEPH WHELESS, Respondent, v. MEYER-SCHMID GROCER COMPANY, Garnishee of WILLIAM MORNINGSTAR, Appellant.

**St. Louis Court of Appeals, June 22, 1909.**

1. **EVIDENCE: Contracts: Negotiations Merged into Written Contract.** Negotiations between the parties to a contract prior to the execution thereof are merged therein, and evidence concerning such negotiations is incompetent.

2. ————: ————: **Parol Evidence to Explain Ambiguity in Written Contract.** Where a contract in writing is ambiguous, parol evidence is admissible to explain the ambiguity, and to show the course of dealing between the parties subsequent to the contract and thus establish the practical interpretation they placed upon it.

3. **SALES: Essential Elements.** The essential elements of a sale at common law are a mutual agreement, competent parties,

money consideration, and transfer of the absolute or general property in the subject of the sale, from the seller to the buyer.

4. ————: ————: **Delivery not Necessary.** It is not necessary, at common law, that there be a present delivery of the chattel to pass title. And the sale may be perfect, and title pass, although the chattel is in the vendor's possession and is to remain in his possession until the purchase price is paid.

5. ————: **Contract for Future Delivery: Equitable Assignment of Proceeds of Sale.** A contract provided for the sale of a quantity of vinegar and that the vendee should dispose of the same before a certain date to such dealers as should be deemed safe and reliable by the vendor, and that the vinegar should be shipped by the vendor to such parties and that the vendor should collect from them the purchase price and should pay itself therefrom the stipulated price for the vinegar and credit the balance to the account of the vendee. *Held*, that a present sale was intended although the vendor retained possession, and that by the contract an equitable assignment of the proceeds of all such sales as might be made to dealers by the vendee was made by the vendee to the vendor.

6. **CONTRACTS: Assignments of: No Particular Form Necessary.** No particular form of words is necessary to the assignment of an account or obligation, but any act showing an intention to transfer an interest is sufficient.

7. ————: **Equitable Assignments: Enforcement.** An equitable assignment creates a present title in the assignee to the proceeds of the assigned obligation, and equity stands ready to enforce it as soon as the property comes into existence.

8. **GARNISHMENT: Garnisher Has no Greater Rights than Execution Debtor.** In a suit by attachment, where a third person is summoned as garnishee, plaintiff has no greater rights against the latter than existed in favor of his debtor at the time of the garnishment.

9. ————: ————: **Equitable Assignment.** Where the debt sought to be reached by garnishment has been equitably assigned by plaintiff's debtor, prior to the garnishee being summoned, it is not subject to the garnishment, for the reason that a credit of defendant, to be reached by garnishment, must be both legally and equitably due him.

Appeal from St. Louis City Circuit Court.—*Hon. C. Orrick Bishop,* Judge.

REVERSED.

*Lee W. Grant* and *P. B. Kennedy* for appellant.

Appellant contends that the trial court committed error. First.—In excluding evidence tending to show the real contract or agreement between Morningstar and the American Fruit Product Company, that is, subsequent to the written memorandum, showing their mode of dealing, indicating and showing absolutely their understanding between themselves. Second.—In giving the instructions asked by the plaintiff to the effect that the memorandum entered into between the parties July 28, 1904, was an absolute sale of the vinegar and passed title to it or its proceeds to Morningstar. Third.—That the evidence introduced, and which was considered by the court, showed conclusively that Morningstar had no title to the vinegar or its proceeds, and under the law and the evidence the verdict and judgment should have been for the defendant. Fourth. —That the court committed error in refusing instructions offered by the defendant. A contract of sale, like any other contract, is a question of the intention of the parties. Ober v. Corson, 62 Mo. 209. Where a writing in question is not sued upon and is not between the parties to the suit, oral evidence concerning it does not violate the rule against the oral contradiction of a writing. Murphy v. Railroad, 15 Mo. App. 594; Cordes v. Straszer, 8 Mo. App. 61. No formal assignment of an account is necessary; any act showing an intent to the party's interest is sufficient. Smith v. Sterett, 24 Mo. 260; Chrisman v. Divinia, 141 Mo. 122; Roeder v. Schryock, 61 Mo. App. 485; Davis v. Creamery Co., 63 Mo. App. 476. Anything that shows an intention on the one side to make a present irrevocable transfer to the fund, and from which an assent to receive, it may be inferred on the other, will operate in equity as an assignment if supported by a sufficient consideration. Kimball v. Donald, 20 Mo. 577; Ford v. Angelbrodt, 37 Mo. 50; Bank v. Bogy, 44 Mo. 13. An assignee of an account, assigned for value previous to

a garnishment by virtue of an execution against the as-signor, has a superior right to the plaintiff in the execution, although the assignee may not have given notice of the assignment previous to the garnishment. Smith v. Sterett, 24 Mo. 260; Knapp v. Stordley, 45 Mo. App. 264; Hendrickson v. Bank, 81 Mo. App. 332. To constitute a valid assignment of a chose in action no particular words are necessary. Any act or words are sufficient which show due intention of transferring or appropriating the chose in action to the assignee for a valuable consideration. Macklin v. Kinealy, 141 Mo. 113. An order or assignment made prior to the service of a writ of garnishment on the debtor vests in the assignee a right superior to that of the plaintiff in the garnishment, although no notice was given to the debtor of the assignment. Hendrickson v. Bank, 81 Mo. App. 332. The attaching creditor can stand in no better situation than the debtor. Smith v. Sterrith, 24 Mo. 260; 81 Mo. App. 332. It is permissible for the garnishee to interpose the rights of alleged owners if the fund in defense of the garnishment. Findsay v. Brooks, 82 Mo. App. 301. Plaintiff in a garnishment based on an alleged indebtedness only succeeds to the rights of the garnishee's alleged creditor, and whatever would defeat the creditor in a suit by him to recover the alleged debt will be fatal to the recovery in such garnishment. McDermott v. Donegan, 44 Mo. 85.

*Joseph Wheless* for respondents.

(1) The contract was an executed sale. Williams v. Evans, 39 Mo. 201; Sigerson v. Kahmann, 39 Mo. 206; Manufacturing Co. v. Jones, 64 Mo. App. 218; Harding v. Manard, 55 Mo. App. 369; Toney v. Goodley, 57 Mo. App. 240; Machine Co. v. Criswell, 58 Mo. App. 473; Keiler v. Tutt, 31 Mo. 306; Strauss v. Hirsch, 63 Mo. App. 103; Conrad v. Fisher, 37 Mo. App. 352; Gatzweiler v. Morgner, 51 Mo. App. 49; Voglesang v. Fisher, 128 Mo. 386; Wren v. Kuehler, 68 Mo. App.

683; Collins v. Lumber Co., 128 Mo. 465-6; Bass v. Walsh, 39 Mo. 197; Bicking v. Stevens, 69 Mo. App. 168; Cotton Press Co. v. Stanard, 44 Mo. 83; Lumber Co. v. DeLisle, 107 Mo. App. 615; Cunningham v. Ashbrook, 20 Mo. 554; Thompson v. Massey, 76 Mo. App. 201; Ober v. Carson, 62 Mo. 209; Greer v. Bank, 128 Mo. 572; Dowell v. Taylor, 2 Mo. App. 329; Grocer Co. v. Clements, 69 Mo. App. 448; Hamilton v. Clark, 25 Mo. App. 437; Mining Co. v. Insurance Co., 25 Mo. App. 265; Zwisler v. Storts, 30 Mo. App. 170; State v. Wingfield, 115 Mo. 437; Blow v. Spear, 43 Mo. 497; Chapman v. Kerr, 80 Mo. 158; Van Horn v. Rucker, 33 Mo. 391; Halliday & Co. v. Lesh, 85 Mo. App. 288; Peters v. Featherstun, 61 Mo. App. 469; Reid, Murdock & Co. v. Mercurio, 91 Mo. App. 673; England v. Mortland, 3 Mo. App. 493; Glass v. Brazer Bros., 91 Mo. App. 564; "The Law," Vol. 2, p. 364; Bissel v. Balcom, 39 N. Y. 275; Commonwealth v. Hess, 148 Pa. St. 98, 33 Am. St. Reps. 810; Chickering v. Bastress, 130 Ill. 206, 17 Am. St. Reps. 309; Phosphate Co. v. Gill, 69 Md. 537, 9 Am. St. Reps. 443; Sutherland v. Brace (C. C. A.), 73 Fed. 624; Land & Cattle Co. v. Mann, 130 U. S. 69; Hatch v. Oil Co., 100 U. S. 124; Beardsley v. Beardsley, 138 U. S. 262; Blackwood v. Packing Co., 76 Cal. 212, 9 Am. St. Rep. 199; Tufts v. Griffin, 107 N. C. 47, 22 Am. St. Rep. 866; 24 Am. and Eng. Enc. Law, Title, Sales, *passim*. (2) Appellant contends that the "intention of the parties," which of course is to govern the interpretation of the contract, shows that no "sale" was contemplated. But the language of the contract, no less than the acts and declarations of the parties, conclusively shows an outright sale, under which the title passed to Morningstar. It is true that in every case of purchase the question of sale or no sale is a matter of intention; but such intention must always be determined by the conduct, acts and declarations of the parties; and not by secret intentions existing in the

minds of the contracting parties. Machine Co. v. Cris-
well, 58 Mo. App. 473; Strauss v. Hirsch, 63 Mo. App.
103; Gatzweiler v. Morgner, 51 Mo. App. 49; Wren v.
Kuhler, 68 Mo. App. 683; Blackwood v. Packing Co.,
76 Cal. 212. (3) It is quite apparent under the con-
tract in evidence that the arrangement for the vendor
to bill out the vinegar and collect the proceeds was
merely a method of securing payment, of making good
the vendor's lien; it was simply a preservation of se-
curity. Under all the authorities this does not affect
the completed sale and the passing of title. Bissell v.
Balcom, 39 N. Y. 275; Conrad v. Fisher, 37 Mo. App.
352; Voglesang v. Fisher, 128 Mo..386; Williams v.
Evans, 39 Mo. 201; Sigerson v. Kahmann, 39 Mo. 206;
Mfg. Co. v. Jones, 64 Mo. App. 218; Cotton Press Co.
v. Stanard, 44 Mo. 83; Cunningham v. Ashbrook,
20 Mo. 554; Ober v. Carson, 62 Mo. 209; Dow-
ell v. Taylor, 2 Mo. App. 329; Blow v. Spear, 43 Mo.
497; Lumber Co. v. DeLisle, 107 Mo. App. 615; Beards-
ley v. Beardsley, 138 U. S. 262; Cattle & Land Co. v.
Mann, 130 U. S. 69; Hatch v. Standard Oil Co., 100 U.
S. 124; Chickering v. Bastress, 130 Ill. 206; Common-
wealth v. Hess, 148 Pa. St. 98. (4) The testimony of
Shepard Foster needs only to be read in the light of the
issues in this case, to be held entirely inadmissible for
any purpose. Besides being quite immaterial under any
aspect of the case, it is an *ex post facto* attempt to ex-
plain away and contradict the explicit terms of the
written contract. This cannot be permitted for two
reasons: (1) because parol evidence is not admissible
for this purpose; and (2) the written contract was of-
fered in evidence by defendant, as the basis of its at-
tempt to defeat plaintiff's action, and it is bound by its
own document in evidence. Schneider v. Kirkpatrick, 8
Mo. App. 152; Sayre v. Burdick, 47 Minn. 367. But the
contract as written was very plain and unambiguous,
and even if Shepard Foster were quite honest in testi-

fying that the company "did not sell any vinegar to Morningstar," still the testimony, and all the rest along these lines, was not properly admissible. Halliday & Co. v. Lesh, 85 Mo. App. 288; Peters v. Featherstun, 61 Mo. App. 469; Beardsley v. Beardsley, 138 U. S. 262. (5) Defendant tries to blow hot and cold in this case. It sets up two entirely contradictory defenses: (a) That the written contract is "not a sale," but something else—it fails to tell us what; and, (b) That Morningstar "assigned" the proceeds of the Meyer-Schmid transaction to the Fruit Product Co. This of course admits the property in Morningstar, else he could not "assign" it. Defendant cannot ride both these defenses. England v. Mortland, 3 Mo. App. 493; Reid, Murdock & Co. v. Mercurio, 91 Mo. App. 681.

NORTONI, J.—This is a garnishment proceeding at law. Plaintiff recovered and the garnishee appeals. It appears that plaintiff instituted his suit by attachment against defendant, William Morningstar, and summoned the Meyer & Schmid Grocer Company as garnishee of said Morningstar. The attachment was sustained and judgment given for the plaintiff against the defendant, Morningstar. The Meyer & Schmid Grocer Company, garnishee, defended, however, and denied that it was the debtor of the defendant, Morningstar. The garnishee asserted that while it had purchased a considerable quantity of vinegar from defendant, Morningstar, it owed the American Fruit Product Company and not Morningstar the purchase price thereof. Plaintiff joined issue on this matter and a trial was had before the court sitting as a jury. The court gave judgment for the plaintiff to the effect that the garnishee was the debtor of Morningstar, and not the debtor of the American Fruit Product Company. The facts out of which the controversy arose, are as follows:

William Morningstar, defendant in attachment, was conducting a wholesale vinegar business under the

trade name of the Purity Vinegar Works, at Canastota, New York. He was not a manufacturer of vinegar, and it seems, was without means. He proposed to the American Fruit Product Company, a manufacturer of vinegar, that he would purchase the vinegar he sold from it on credit, and sell the same to dealers who, instead of paying him, Morningstar, should pay the American Fruit Product Company for the goods. The proposition was accepted and the American Fruit Product Company sold Morningstar two thousand barrels of vinegar and gave him the privilege of having an additional one thousand barrels on the same terms. Immediately upon selling the two thousand barrels of vinegar to Morningstar, the American Fruit Product Company stamped his trade name, Purity Vinegar Works, thereon, and it seems, thus segregated or designated that number of barrels as the property of Morningstar. The agreement made between Morningstar and the American Fruit Product Company is evidenced by a written contract as follows:

"ROCHESTER, N. Y., July 28, 1904.

"We, the American Fruit Product Co., of the first part, have under the above date sold to Wm. Morningstar, of the second part, two thousand (2000) barrels, with the privilege of three thousand (3000) barrels of cider vinegar, to contain not less than four and one-half per cent of acetic acid, at eight cents per gallon, F. O. B. such mills of ours as said Morningstar might deem necessary to instruct shipment from, no charge for cooperage; cooperage must be first class. This vinegar is guaranteed to Morningstar to be pure apple cider vinegar and to comply with the laws of such States as he may deem fit to ship it into.

"Morningstar, of the second part, agrees to accept these goods under the above contract, and furthermore agrees to dispose of this contract between now and Jan. first, 1905. It is also understood that we, the American

Fruit Product Co., are to accept such orders from the jobbing trade as we deem safe and reliable to ship, and that the goods are to be billed by us and collected for in the usual manner, crediting Morningstar with the difference between the cost price to him and their proceeds received from the jobber.

"We have also agreed to furnish him with what white distilled vinegar his orders may call for at seven cents per gal. for fifty grain, no charge for cooperage; cooperage to be first class.

"We, the American Fruit Product Co., have also agreed to take charge of such advertising matter as Morningstar deems necessary to furnish the trade in selling these goods.

"Morningstar, of the second part, has agreed to leave in our hands at all times a sufficient amount of money to cover the expenses of these inducements.

"In case Morningstar should require some cider vinegar with less strength than the strength mentioned above, the price is to be in proportion.

"Terms of this contract, sixty days net, or two per cent ten days.

"In case we are not able to ship from such mills as Morningstar should request, we agree to stand half the difference in freight between the two mills.

"In case Morningstar orders vinegar in half barrels, the price is to be nine and one-quarter cents per gallon F. O. B. mills.

"AMERICAN FRUIT PRODUCT CO.,

"By L. SHEPARD FOSTER, Gen. Mgr.

"WILLIAM MORNINGSTAR."

The record discloses that Morningstar negotiated the sale of four hundred barrels of vinegar to the garnishee, Meyer & Schmid Grocer Company, at the agreed price of thirteen cents per gallon. The order for this vinegar was taken by Morningstar upon billheads under his trade name (that is, Purity Vinegar Works) and

transmitted immediately to the American Fruit Product Company, the manufacturer of the vinegar, as contemplated by the contract above set out. The American Fruit Product Company having investigated the credit of the customer, the present garnishee, duly accepted the order for and shipped the four hundred barrels of vinegar to the Meyer & Schmid Grocer Company. Upon accepting the order and shipping the vinegar, the American Fruit Product Company charged the same on its books, not to Morningstar, but to the Meyer & Schmid Grocer Company, to whom the shipment was made. It appears the purchase price of the vinegar was still unpaid and owing by the garnishee, Meyer & Schmid Grocer Company at the time of the service of the garnishment herein. Evidence of the course of dealing between Morningstar and the American Fruit Product Company subsequent to and under the contract was given to the effect that Morningstar would solicit orders for vinegar from the jobbing trade, and upon procuring an order, submit the same, as was done in this case, to the American Fruit Product Company to be filled by a consignment of the vinegar ordered. The American Fruit Product Company, upon receiving such orders, would investigate the credit of the jobber to whom Morningstar had sold the goods, and if satisfactory to it, would ship the vinegar, not to Morningstar, but direct to the jobber, and charge the same upon its books to the jobber. Thereafter, when the account became due under the terms of the sale, the American Fruit Product Company would collect the purchase price from the jobber and retain sufficient thereof to pay itself for the vinegar furnished, and credit Morningstar on the books with the balance or margin over and above the amount due the American Fruit Product Company. It appears, too, that Morningstar would frequently draw drafts upon the American Fruit Product Company in advance of sales and the Fruit Product Company would accept and pay such drafts and charge the same upon its books to Morning-

star. As a result of this practice, Morningstar was indebted all of the time to the American Fruit Product Company and was indebted to it in a considerable sum at the time of the sale of the vinegar to the garnishee, Meyer & Schmid Grocer Company. Morningstar was insolvent during all of the times herein referred to and it was because of this the arrangement was made for the American Fruit Product Company to charge the vinegar to the purchaser to whom Morningstar sold the same, and not to Morningstar.

The case was tried before the circuit court without a jury. By declarations of law given, it appears the court declared as a matter of law that the transaction evidenced by the contract hereinbefore set out, operated as a sale of the vinegar and vested the title thereof in Morningstar, and that therefore when Morningstar resold the four hundred barrels thereof to the garnishee, the Meyer-Schmidt Grocer Company, this transaction created an indebtedness of the garnishee in favor of Morningstar, the defendant in attachment. By instruction number two, on behalf of plaintiff, the court further declared as a matter of law on the facts stated that if it appeared the Meyer & Schmid Grocery Company had in its possession, yet unpaid, sufficient of the money due on said invoice of vinegar to satisfy plaintiff's demand and costs, then the money in the hands of the garnishee, Meyer & Schmid Grocer Company, was owing to the defendant in attachment, Morningstar, and subject to the garnishment in this case. The court refused instructions on the part of the garnishee to the effect that if it found from the evidence that the course of dealing had under and contemplated in the contract between the American Fruit Product Company and Morningstar was that the American Fruit Product Company shipped and charged all vinegar disposed of by Morningstar direct to the parties ordering the same and collected the proceeds from such sales and paid itself therefrom and then paid or credited Morningstar with the balance

of such proceeds after liquidating his obligation to it, and that such was the transaction in this case, then this operated an assignment by Morningstar of the proceeds from such sales to the American Fruit Product Company and that the plaintiff could not recover. These declarations of law may be approved in part, and in part condemned, for although there was a present sale of the two thousand barrels of vinegar by the American Fruit Product Company to Morningstar, it is clear indeed that the parties contemplated and intended an assignment to the American Fruit Product Company of the proceeds of such sale of vinegar as Morningstar might make, to liquidate the obligation incurred by the purchase price of the vinegar and any advances made by the manufacturer. There was considerable testimony sought to be introduced and excluded at the trial pertaining to negotiations had between the American Fruit Product Company and Morningstar prior to the execution of the contract. Of course, these negotiations were all merged in the contract thereafter executed and this testimony was incompetent. However that may be, the testimony introduced tending to elucidate the ambiguity in the contract with respect to that portion which provides, "it is also understood that we, the American Fruit Product Company are to accept such orders from the jobbing trade as we deem safe and reliable to ship, and that the goods are to be billed by us and collected for in the usual manner, crediting Morningstar with the difference between the cost price to him and their proceeds received from the shipper" was competent as tending to show the course of dealing between the parties subsequent to and under the contract. This testimony only elucidated the intention of the parties concealed in the more or less ambiguous words by disclosing the practical interpretation by the parties of the provision referred to. [St. Louis Gas Light Co. v. St. Louis, 46 Mo. 121; Contad v. Fisher, 37 Mo. App. 352, 376; Sedalia Brew. Co. v. Sedalia Waterworks Co.,

34 Mo. App. 49.] Furthermore, it is always competent where there is some ambiguity in the contract, to receive parol testimony to the end that the court may be endued with the knowledge the parties had of the situation and the subject-matter and directed to the obvious purpose intended by them. [Riggs v. Meyers, 20 Mo. 239; Bernero v. McFarland R. E. Co., 134 Mo. App. 290, 114 S. W. 531.] The provision above quoted from the contract to the effect that the American Fruit Product Company might accept such orders from jobbers as it deemed safe to ship and that the goods should be delivered to them and collected for by the American Fruit Product Company in and of itself is somewhat indefinite. In view of the conceded fact that Morningstar was wholly insolvent, this uncontroverted testimony introduced shows the practical interpretation placed upon the contract to the effect that the American Fruit Product Company was willing to part with its goods only upon the privilege of charging the same to responsible jobbers and collecting therefrom for the shipment. This intention of the parties is obvious. In fact, it is uncontroverted in the case that such was the intention of the parties.

The contract recites that the American Fruit Product Company have, under the above date, sold to William Morningstar, two thousand barrels of vinegar F. O. B. such mills of the American Fruit Product Company as Morningstar might deem necessary to instruct shipment from, and that Morningstar agreed to accept these goods and dispose of them prior to January 1, 1905. The terms of payment therein provided for was sixty days net, or two per cent ten days. These words certainly import a present sale of the vinegar to Morningstar. They signify a passing of title and a vesting of the same to Morningstar on a credit of sixty days from the time the vinegar was delivered to him F. O. B. cars. The contract being in writing, sufficiently definite and certain, the question of the sale is thereby removed from

the operation of the statute of frauds, and in this connection, we have to determine the matter solely by reference to the principles of the common law which obtain in such circumstances. The essential element of a sale at common law are: First, a mutual agreement; second, competent parties; third, money consideration; fourth, transfer of the absolute or general property in the subject of the sale from the seller to the buyer. [Benjamin on Sales (5 Ed.), 2; 24 Amer. and Eng. Ency. Law (2 Ed.), 1022.] It is certain that at common law, no present delivery is essential to the passing of title in the sale of a chattel. The right of property is not dependent upon actual possession in such circumstances and therefore the sale may be complete and the title pass to and vest in the purchaser even though no present delivery is had. It is true, too, that when the seller has performed all that is required of him under the terms of the contract and delivery alone remains to be made, the property vests in the buyer so as to subject him to any risks which may thereafter befall the subject-matter of the sale. It therefore appears that the sale may be perfect, title pass and the property be at the risk of the purchaser, and yet the vendor retain possession and have a complete right to retain possession until the price is paid and to compel payment before delivery. [Williams v. Evans, Admr., 39 Mo. 201; Bass v. Walsh, 39 Mo. 192; Bissell v. Balcom, 39 N. Y. 275; 24 Amer. and Eng. Ency. Law (2 Ed.), 1045, 1047, 1051.] Indeed, generally speaking, at common law, uninfluenced by the Statute of Frauds, the question is one of intention; and if it is obvious that the vendor intended to relinquish all further claim as owner and the purchaser, to assume such control with all liabilities attached, the transaction is a sale, irrespective of the question of delivery. [Ober v. Carsons, Excr., 62 Mo. 209; 24 Amer. and Eng. Ency. Law (2 Ed.), 1047.] Now, a fair construction of the contract between the American Fruit Product Company and Morningstar

discloses that a present sale of the two thousand barrels of vinegar was intended by the parties, on credit, as therein stipulated. It appears, too, the parties contemplated a future delivery of the vinegar to Morningstar F. O. B. cars at the mills of the American Fruit Product Company under subsequent provisions of the contract. It appears that Morningstar agreed to accept the goods and dispose of them by January 1, 1905, so that the American Fruit Product Company might receive compensation therefor. It is true, for the present the American Fruit Product Company retained possession of the vinegar. Nevertheless, it marked the same and designated the two thousand barrels as the property of Morningstar by stamping his trade name, Purity Vinegar Works, thereon, and agreed to deliver the vinegar upon the cars whenever Morningstar furnished orders from responsible jobbers to whom it might look for its compensation. As long as the vinegar remained in possession of the American Fruit Product Company, it had the right to look to it for the purchase price, provided Morningstar was insolvent, as he was at all times. That is to say, so long as the vinegar remained in the actual custody of the American Fruit Product Company and Morningstar was insolvent, the American Fruit Product Company had the right to protect its interests by enforcing the vendor's lien upon the goods, and this is true, even though it held the vinegar as bailee of Morningstar, the purchaser. Symbolical delivery is not sufficient to destroy the vendor's right to enforce his lien. Indeed, nothing less than the surrender of the actual custody of the goods operates to destroy this security which the law affords in furtherance of justice to the end that one man's goods shall not be appropriated to the payment of another man's debt. [Conrad v. Fisher, 37 Mo. App. 352; Vogelsang's Admr. v. Fisher, 128 Mo. 386.] So we see when the contract between these parties is interpreted with reference to the settled principles of law touching

the rights of the vendor of goods, it was obviously in-
tended that the American Fruit Product Company
should have either compensation for its vinegar or an
indebtedness from solvent or satisfactory customers of
Morningstar before it parted with its rights in the prem-
ises. While the American Fruit Product Company had
parted with its title to the vinegar by virtue of the pres-
ent sale to Morningstar, it nevertheless, by continuing
in possession thereof, retained two valuable rights
operating to assure payment of the purchase price.
These rights are, that of the vendor's lien referred to,
and the right of stoppage *in transitu.* The right of
stoppage *in transitu* remained until actual delivery is
made to the consignee, provided he becomes insolvent
in the meantime, and it is an extension of the identical
right upon which rests the vendor's lien. The right of
stoppage *in transitu* continues, of course, after the ven-
dor has parted with the actual custody of the goods,
whereas the right of the vendor's lien continues only
so long as the vendor in some manner retains actual
custody of the goods. [Conrad v. Fisher, 37 Mo. App.
352.] However, in this case, there was not only a pres-
ent sale of the vinegar to Morningstar, but in keeping
with the terms of the contract, there was thereafter
actual delivery of the four hundred barrels referred to
to the Meyer-Schmid Grocer Company. The actual de-
livery of the goods to such grocer company therefore
eliminates all question of the vendor's lien or the right
of stoppage *in transitu* as pertinent principles for the
determination of the rights of the parties. These doc-
trines are not adverted to for the purpose of predicating
any right of the American Fruit Product Company'
thereon in the present controversy, but instead, we have
given them attention in order to elucidate the manner
contemplated by the parties and manifested by the con-
tract, to secure payment of the purchase price to the
American Fruit Product Company who furnished the
vinegar. It is obvious that the American Fruit Product

Company did not intend to give possession of its goods over to Morningstar or to any one else for that matter, until it had either received compensation therefor or had acquired the right to look to a solvent person or institution for pay. That is, it appears that it continued in possession and was thereby in a situation to enforce either its lien or its right of stoppage *in transitu* before parting with the actual possession of the vinegar or delivery to a consignee. When, upon receiving the Meyer & Schmid Grocer Company's order from Morningstar, the American Fruit Product Company delivered the goods to the grocer company, accepted their credit and charged the same to that company upon its books, the Fruit Product Company parted with two valuable rights which had theretofore secured the obligation incurred by Morningstar in the purchase price. This procedure was contemplated between the parties and is provided for in the contract, to the effect, substantially, that the American Fruit Product Company was to accept such orders from the jobbing trade as it might deem safe and reliable to ship and that it should ship the goods, billed by it, to such jobber and collect the proceeds of the sale therefor from those responsible jobbers. Upon collecting such proceeds, it became the duty of the American Fruit Product Company to credit Morningstar with the difference between the cost price to him of the vinegar and the proceeds received from the jobber, and retain the balance in payment for the vinegar which it had furnished. It is clear, too, from this provision of the contract, supplemented by the course of dealing thereunder, that the parties contemplated and intended an assignment to the American Fruit Product Company of the proceeds of all sales made by Morningstar to the end of compensating the Fruit Product Company for its vinegar and liquidating Morningstar's obligations incurred in drawing drafts on the fruit Product Company in contemplation of his sales. If there be any proposition settled in our law, it

is to the effect that no particular form of words is necessary to the assignment of an account or obligation. Any act showing an intention to transfer the party's interest for that purpose is sufficient; and it is clear the stipulation in the contract between these parties to that end is sufficient as an equitable assignment of the rights of Morningstar of the indebtedness which accrued to him *eo instanter* upon causing the vinegar to be delivered to the garnishee, Meyer & Schmid Grocer Company. Such equitable assignments are enforced in the courts of equity on the ground that the assignee is entitled to have immediate specific performance of the assignment as soon as the proceeds come into existence in the hands of the assignor. However, the doctrine extends further still and the right accruing from such assignments to the assignee is not to be measured by the limitations which attended the equity remedy alone. The assignee's right, says Mr. Bispham, is "something more. It is a present title non-existent at law, but thoroughly recognized in equity; and to that title equity stands ready to give full effect the instant the property comes into being." [Bispham's Principles of Equity (6 Ed.), sec. 165; Tailby v. Official Receiver, 12 App. Cases, 531.] There are numerous authorities to the effect that such equitable assignments as that involved here creates a present title to the proceeds of the assigned obligation in the assignee. The doctrine proceeds in execution of the obvious intention of the parties, for equity treats that as done which should have been done. [Smith v. Sterritt, 24 Mo. 260; Juhn v. Swarz, 33 Mo. App. 610, 615; Macklin v. Kinealy, 141 Mo. 113; Drake on Attachments (7 Ed.), sec. 610; Bispham's Principles of Equity (6 Ed.), 167; Boyer v. Hamilton, 21 Mo. App. 520, 525.] It is obvious the parties intended an assignment of the proceeds of the sale of the four hundred barrels of vinegar involved to the American Fruit Product Company for the purpose of liquidating the indebtedness of de-

fendant, Morningstar, to that company, on account of the purchase price of such vinegar and otherwise. In view of this, the court should have given the declarations of law requested by defendant touching the assignment, unless, by virtue of the garnishment, the plaintiff in attachment acquired a superior right in the indebtedness of the Meyer & Schmid Grocer Company for the vinegar than existed in favor of the original creditor of the garnishee (Morningstar) after the assignment. Of course, in levying the attachment and garnishing the Meyer & Schmid Grocer Company as the debtor of Morningstar, plaintiff in attachment can acquire no greater rights against the garnishee than those existing in favor of his debtor, the defendant Morningstar, at the time of the garnishment. After all, the plaintiff in attachment, upon the garnishment being sustained, succeeds only to the rights of his debtor, the defendant in attachment. It is certain the attaching creditor could stand in no better situation in respect of the fund garnished than his debtor, the defendant in attachment, and if the fund garnished was not owing to the defendant in attachment or had been assigned prior to the garnishment, then the attachment defendant, Morningstar, had no rights therein to which plaintiff could succeed. Indeed, in such circumstances, the defendant in attachment had no property in the indebtedness whatever and no right therein subject to attachment. His rights having been assigned to the American Fruit Product Company in good faith for a valuable consideration, the garnishee owed the amount to that company and not to the defendant, Morningstar. [Smith v. Sterritt, 24 Mo. 260; McDermott v. Donegan, 44 Mo. 85; Drake on Attachments (7 Ed.), sec. 604.] And, indeed, this is true, even though the assignment of the indebtedness be an equitable assignment only, for when it is sought to reach upon garnishment a credit of the defendant in attachment, it must be both legally and equitably due to him. In such cases, even though the assignment be

equitable only, the court will take notice of it and protect the rights of the assignee. This for the reason, says Mr. Drake: "As the defendant has parted with his interest in the debt, and could not legally maintain an action for it against the garnishee for his own benefit; and as the plaintiff can acquire no greater interest in the debt than the defendant had at the time of garnishment, it results that the garnishee cannot be charged for that which, equitably, he has ceased to owe to the defendant and owes to another person." [Drake on Attachments (7 Ed.), 604, 602.] Indeed, on principle, this must be true, for all that can be seized under execution or by process of garnishment, as in this case, is the right which remains in the assignor and this is nothing more (at least where the assignment is made *bona fide* as here) than the legal title, subject to the equitable interests of the assignee. And therefore, as no right could be enforced by Morningstar against the Meyer & Schmid Grocer Company after the assignment, none can be enforced by the plaintiff in attachment who succeeds only to the rights of Morningstar. To the same effect, see the following cases in point: "Dix v. Cobb, 4 Mass. 508; Wakefield v. Martin, 3 Mass. 558; Pellman v. Hart, 1 Barr (Pa.) 263; Stephens v. Stephens, 1 Ashm. (Pa.) 190; Knapp, Stout & Co. v. Standley, 45 Mo. App. 264; Hendrickson v. Bank, 81 Mo. App. 232.

It appearing the indebtedness of the garnishee to the defendant, Morningstar, had been assigned to the American Fruit Product Company in good faith and for a valuable consideration prior to the garnishment herein, there was no indebtedness of the garnishee to the defendant in attachment against which the plaintiff's rights attached upon garnishment. In this view, the judgment must be reversed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.