## TURNER LOOKER COMPANY, Appellant, v. W. T. HINDMAN et al.

Division One, April 6, 1923.

1. **SALES: Shipment To Vendor's Orders: Destruction by Fire: Title.** The contract of purchase provided that the goods were bought f. o. b. shipper's warehouse, goods to be shipped to his order, draft for price with bill of lading attached to be sent to a named bank in city of destination, and on its arrival vendee would pay it and take up the bill and receive goods. The draft with bill of lading attached reached the bank before the goods arrived and was presented for payment to the vendee, who asked that it be held until the goods arrived. The goods arrived between the 25th and 30th of May, and on their arrival the vendee was immediately notified by the station agent, and requested. to take the goods from the depot. On June 6th, the vendor notified the vendee that he had received no return on the draft, and asked the vendee to honor it. On June 9th, and after the goods had remained in the depot ten or twelve days, the agent saw the vendee and again requested him to come and get the goods, and was informed that he would do so the next day. That night the depot and goods were destroyed by fire. The vendor had done all that his contract required him to do, and the vendee's only reason for refusing to pay the draft is that the goods had been destroyed. *Held,* that,

under the circumstances, the vendee held the title at the time the goods were accidentally destroyed, and must pay for them.

2. ———: ———: ———: ———: **Delivery to Carrier: Waiver and Acceptance.** Generally, when a vendor delivers goods to the carrier, taking a bill of lading in himself as consignee, he retains the title until the purchase price is paid, and in such case the title does not pass to the vendee upon the loading of the goods, nor immediately upon their arrival at their destination and notice thereof to him; but where the vendor performs everything that he had agreed to do, and the vendee makes no claim to the contrary, but fails, and continues unreasonably to fail, to perform his part of the contract, the vendor may elect to hold the goods for the vendee, at his risk, and enforce payment at the contract price; and where, at least a week after arrival of the goods at their destination, the vendee was asked to pay the purchase price and take the goods and failed to do so, and thereupon the vendor wrote directly to the vendee insisting that he pay the draft, the fair inference is that the vendor was holding and intending to hold the goods for the vendee; and where the vendee, after receiving such request, notified the carrier's agent that on the day following he would remove the goods, the vendor's right to enforce payment accrued, and the vendee, although the goods were destroyed by fire the following night, must pay for them.

Transferred from Springfield Court of Appeals.

REVERSED AND REMANDED.

*J. E. Duncan* for appellant.

(1) When the shipment of the whiskey and the bill of lading with draft attached arrived at Caruthersville, and defendants were notified of such arrival and said draft was presented for payment to the defendants by the Citizens Trust Company, the contract between the plaintiff and defendants became an executed contract, and the title to said whiskey vested in the defendants, subject to the lien of the plaintiff for the balance of the purchase price, even though said whiskey was shipped to shipper's order, and the plaintiffs are entitled to recover the contract price. Price Brokerage Co. v. Railroad Co., 199 S. W. 732; Ilgenfritz v. Railroad Co., 169 Mo. App.

652; Roaring Fork Potato Growers v. Clemons Produce Co., 193 Mo. App. 653; Estis v. Harnden, 153 Mo. App. 381; Hamilton v. Clark, 25 Mo. App. 428; Kuhler v. Tobin, 61 Mo. App. 576; Koening v. Boat Mfg. Co., 155 Mo. App. 685; Ohler v. Fruit Co., 162 Mo. App. 446; Potato Growers Assn. v. Produce Co., 185 Mo. App. 1; Range Co. v. Merc. Co., 120 Mo. App. 438; Ozark Lbr. Co. v. Chicago Lbr. Co., 51 App. 556. (2) While defendants were entitled to a reasonable time after notice to take up the shipment, yet, to permit the whiskey to remain in the warehouse of the railroad for ten or twelve days after said notice is an unreasonable time. Morrell v. Koerner Parker Lumber Co., 51 Mo. App. 600.

*Ward & Reeves* for respondents.

(1) The authorities cited in appellant's brief do not sustain its contention. None of those cases hold that the title passed to the purchasers merely because the draft was presented to them, but the contrary is the law as laid down by those cases—that is, the title did not pass until the draft was paid and the bill of lading delivered to the purchasers, which was never done in this case. Especially is this true since our statute makes bills of lading negotiable. Secs. 11956, 11957, R. S. 1909. (a) It is admitted in appellant's brief that the title to the goods did not pass at the time they were delivered to the railroad company for shipment, but it is contended that title passed and vested in the purchasers when the draft was presented to purchasers, although the draft was not paid. We deny that this contention is the law. Where, by the terms of the bill of lading, the vendor makes the property deliverable to his own order, or to his agent, this fact is decisive to show that it was the intention of the vendor to reserve the *jus disponendi*, and to prevent the property from passing to the vendor until the draft accompanying the bill of lading was paid. Roaring Fork Potato Growers v. Clemons Produce Co., 193 Mo. App. 653; Bank v. Milling Co., 163 Mo. App. 135; Burgess v.

Railroad, 176 Mo. App. 257; Cold Storage Co. v. Commission Co., 178 Mo. App. 225; Milling Co. v. Stanley, 132 Mo. App. 308; Bergeman v. Ry. Co., 104 Mo. 77; Davenport National Bank v. Homeyer, 45 Mo. 145. (b) The principle of law is well settled that, where property is destroyed by accident, the loss falls upon the holder of the legal title. Seeligson v. Philbrick, 30 Fed. 600; Dows v. National Exch. Bank, 91 U. S. 618; North Penn. Ry. Co. v. Commercial Bank, 123 U. S. 727; Portland Flouring Co. v. British & F. M. Ins. Co., 130 Fed. 860; Tiedeman on Sales, sec. 85; 35 Cyc. 333. (2) By terms of the sale contract the purchase price was to be paid before delivery of the goods, and therefore this fact is another reason why the title to the goods did not pass. The payment of the contract price was a condition precedent to the passing of title to purchasers. Ruediger v. Dennis, 199 Mo. App. 102; Strothers v. McMullen Lbr. Co., 200 Mo. 647; Johnson-Binkman Co. v. Central Bank, 116 Mo. 558; Strauss, Pritz & Co. v. Hirsch & Co., 63 Mo. App. 95; Ruediger v. Dennis, 201 S. W. 943.

LINDSAY, C.—Plaintiff sued the defendants in the Circuit Court of Pemiscot County for the sum of $3,282.50, the balance alleged to be due on the price of one hundred and twenty-five cases of whiskey sold, and shipped to Caruthersville for defendants. The shipment was made to shipper's order, and a sight draft on defendants for the amount mentioned was attached to the bill of lading. The draft was not paid, and the whiskey while yet in the station of the carrier at Caruthersville was destroyed by fire.

A change of venue was taken, and the case was heard by the Circuit Court of Stoddard County. The defense was that the title to the property at the time of its destruction was in the plaintiff, and that the loss must fall upon the plaintiff. Upon the evidence of plaintiff the Court gave an instruction to the jury that plaintiff could not recover, and directed a verdict for defendants. From the judgment rendered pursuant thereto de-

fendant was allowed an appeal to the Springfield Court of Appeals. On a hearing, two of the judges concurred in the view that the peremptory instruction given by the trial court was error, and that the case should have gone to the jury upon an instruction that if the jury believed plaintiffs' testimony which tended to establish the facts outlined in the majority opinion, the verdict should be for the plaintiff. [232 S. W. 1076.] But, Judge BRADLEY of that court, dissenting, on the ground that the majority opinion was in conflict with the decision of the Kansas City Court of Appeals in the case of Roaring Fork Pota-tc Growers v. Produce Co., 193 Mo. App. 653, and with the great weight of authority as well, the case was certified to this court.

The terms of the contract were expressed in writing. Its essential elements, and the subsequent acts of the parties in relation to it, are sufficiently stated in the majority opinion, as follows:

"Plaintiff's salesman took an order from defendants at Caruthersville, Missouri, for 300 cases of whiskey which were, at the time, in bond in a distillery in Kentucky. The whiskey was to be sent in two shipments. One shipment of 175 cases was made and paid for; the second shipment was made, and the balance thereon not paid.

"The contract of purchase provided that the goods were bought f. o. b. distillery, and $5 per case was paid at the time. It was agreed that the goods should be shipped to shippers' order and draft for the balance of the price with bill of lading attached sent to Citizens Trust Company, at Caruthersville, and that on arrival of the draft the defendants would pay it and take up the bill of lading and the goods. Plaintiff shipped the goods as agreed by the parties. The draft with bill of lading attached reached Caruthersville before the goods arrived and was presented to defendants for payment, when they asked the bank to hold it until the goods arrived. The goods arrived between the 25th and 30th of May, and on their arrival the depot agent immediately notified de-

fendants of their arrival by phone. The next day, he notified them by postal card, and saw them at least twice afterward and asked them to take the goods away from the depot. On June 6th, plaintiff wrote defendants that they had received no returns on the draft and asked them to honor it. On or about June 9th, and after the goods had remained in the depot ten or twelve days, the depot agent saw one of defendants and again requested that they come and get the goods, and was informed that they would do so the next day. That night the depot and these goods were destroyed by fire. Defendants then refused to pay the draft and this suit followed.''

An examination of the record shows that the findings and conclusions as to the facts, stated in the majority opinion, are fully warranted by the evidence. No reason is suggested for the final refusal of defendants to pay the draft except the single fact that the goods had been destroyed. The goods being so destroyed, pending the situation thus outlined, who, as between plaintiff and defendants, must bear the loss? Before the fire the plaintiff had done all that its contract required it to do, and was in no way in default. Defendants' failure to pay the draft during the ten or twelve days while the property remained in the depot was a breach of the contract. The draft and bill of lading were being held by plaintiff's agent, the bank, after demand made of payment. The plaintiff was urging its payment. The station agent of the carrier, also plaintiff's agent, was urging defendants to remove the goods.

It is a well-settled rule that the loss of goods destroyed by accident falls upon him who at the time holds the title. In the case at bar the shipment of the whiskey under the bill of lading, to shipper's order, accompanied by draft upon the purchasers, followed by failure to pay the draft and take the property before its destruction, was taken by the trial court as conclusive that the title was in the seller, at the time of the fire, and that the loss must fall upon the seller. It is generally held that when a vendor delivers goods to a carrier, consigned to the ven-

dee, it is a delivery to the vendee, and title passes; but that if he delivers to the carrier, taking a bill of lading to himself as consignee, he retains the title until the purchase price is paid or tendered. [Scharff v. Meyer, 133 Mo. 444, 445; Hunter Brothers Milling Co. v. Stanley, 132 Mo. App. 308; Gifford v. Willman, 187 Mo. App. 29, and other cases cited in the dissenting opinion.]

It is urged that since under the terms of the bill of lading the whiskey was deliverable upon the order of plaintiff, and was only deliverable upon the payment of the purchase price, the plaintiff showed an intention to retain the *jus disponendi*, until the price was paid, and did retain the title. This is correct in a general way. But, it cannot be applied in this case, as the sole test, under the ultimate situation developed between these parties. It leaves out of consideration certain important facts, ultimate in time and effect, which cannot be ignored here, and which did not appear in the case of Roaring Fork Potato Growers v. Clemons Produce Co., supra, and other cases cited, where the rule referred to was stated. In the decision last mentioned, with which the majority opinion is said to be in conflict, it appears that the bill of lading was to shipper's order, and drafts were drawn for the purchase price of potatoes. But, in that case the plaintiff pleaded that it contracted to deliver and did deliver the potatoes to defendant on board cars at Carbondale, Colorado. The evidence showed that none of the potatoes were delivered at Carbondale. Three cars were loaded there and shipped to defendant at Kansas City, under the conditions mentioned, and the three other cars were never at Carbondale. The court held there was a failure of proof of performance as alleged in the petition. There was not a delivery of any at Carbondale, under the terms of the bill of lading, and there was not in fact, as to the three cars which were never there. It was said that "the petition was at cross purposes with the evidence." It appears that the defendant refused to pay for and receive the potatoes at Kansas City, but the grounds for refusal do not appear, and it does not ap-

pear what became of the potatoes. Therefore it does not appear in that case that the plaintiff had done all it had agreed to do, or that defendant was in default at any time. In both respects it differs from the case at bar.

The title to the goods in the instant case did not pass to defendant when they were loaded for shipment. It is not necessary to hold under the facts in this case, nor is it held, that title passed to the defendants immediately upon the arrival of the goods at Caruthersville, and notice thereof given to defendants. But, we hold that subsequently when plaintiff had performed everything that it had agreed to do, and when defendants were not making any claim to the contrary, but were failing, and continuing unreasonably to fail, in performing their part of the contract, the plaintiff might elect to hold the goods for the defendants, at their own risk, and enforce payment at the contract price. When at least a week after the goods had arrived, the defendants had been asked to pay the purchase price, and take the goods, and had failed to do so, the plaintiff wrote directly to defendants insisting that they pay the draft, a fair inference to be drawn was that plaintiff was holding and intending to hold the goods for the defendants.

A fair inference is that they so understood it and acquiesced therein, since later they promised the station agent that on the day following they would take out the goods. Under the circumstances the plaintiff had the right so to treat the situation. The order called for a particular brand of whiskey, "Old Taylor," and for a specific number of cases of quarts, of pints and of half pints. Under the circumstances shown the plaintiff might well treat the contract as complete on its part; treat the goods as being subject to defendant's order; and insist upon and enforce payment as for a right already accrued. [Dobbins v. Edmonds, 18 Mo. App. 307; Crown Vinegar & Spice Co. v. Wehrs, 59 Mo. App. 493; St. Louis Range Co. v. Kline-Drummond Merc. Co., 120 Mo. App. 438; Black River Lbr. Co. v. Warner, 93 Mo. 374, 386; Oehler v. Fruit Co., 162 Mo. App. l. c. 446, 458;

Weber Motor Co. v. Roberts, 203 Mo. App. 509, 518.] In dealing with cases where the seller, having fully performed all he agreed to do, elects to treat the goods as the property of the buyer after default by the buyer, the courts in many instances take into consideration the character of the goods, and the particular circumstances, but, the right so to elect is generally recognized.

In this connection the language of GOODE, J., in Range Co. v. Mercantile Co., 120 Mo. App. at page 446, is pertinent: "The guiding principle of law in cases arising on breaches of contract for sales of personal property, is to give the aggrieved party the benefit of his contract, by putting him in as favorable a condition as he would have enjoyed if the other party had performed, instead of violating, his agreement."

The Fifth Edition of Benjamin on Sales is said by the editors, in the preface, to be framed upon the British "Sale of Goods Act, 1893," which it is said "is largely based upon and follows the lines of the treatise" written at an earlier time by the learned author. Section 20 of that Code, set out at page 402, covers the subject "of the incidence of the risk." It is a foreign legislative declaration and not controlling, but, it expresses upon that subject, what is generally held by the courts in both countries to be the law, and is a recognition of the principle upon which is based the majority opinion in this case. It is as follows:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer, but when the property therein is transferred to the buyer, the goods are at the buyer's risk whether delivery has been made or not.

"Provided that where delivery has been delayed through the fault of either buyer or seller the goods are at the risk of the party in fault as regards any loss which might not have occurred but for such fault.

"Provided also that nothing in this section shall affect the duties or liabilities of either seller or buyer as a bailee or custodier of the goods of the other party."

The conclusion reached in the majority opinion of the Springfield Court of Appeals is correct, and is founded upon good reasons therein fully given. The trial court should have submitted the case to the jury.

The judgment of the circuit court is reversed, and the cause remanded. *Small, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur.