**MALLORY MOTOR COMPANY, a**
**Corporation, Respondent,**

**v.**

**George M. OVERALL et al., Appellant.**

No. 22190.

Kansas City Court of Appeals.

Missouri.

May 2, 1955.

Ben W. Swofford, Robert A. Schroeder, John C. Milholland, Swofford, Schroeder & Shankland, Kansas City, for appellant.

James Daleo, Kansas City, for respondent.

BROADDUS, Judge.

This is an action upon two checks, the face amount of each being $2,185, or a total of $4,370. At the conclusion of plaintiff's evidence, both parties moved for a directed verdict. The trial court directed a verdict for plaintiff for the amount of the checks, together with interest. Defendant, George M. Overall, has appealed.

Plaintiff's petition named George M. Overall, William F. Becklew and Bernadine Owen as defendants, alleging that they were partners doing business as the Mo-Kan Auto Sales. It being admitted that defendant Overall was the sole owner of the Mo-Kan Auto Sales, the trial court directed a verdict in favor of defendant Becklew, and plaintiff dismissed as to defendant Owen.

Plaintiff Mallory Motor Company, is the successor of the Oakley Motor Company of St. Louis, Missouri.

The facts are not in dispute. Defendant Overall is a dealer in automobiles in Kansas City, Missouri. On August 23, 1949, he called Mr. Robert Sanders of the Oakley Motor Company on the telephone and agreed to purchase from the Oakley Company two 1949 Mercury automobiles. Following the telephone conversation, Overall made out the two checks sued on. It is admitted that they are in his handwriting. They are dated August 24, 1949, are drawn on the City National Bank & Trust Company, at Kansas City, Missouri, payable to the Oakley Motor Company, each in the amount of $2,185. On the back of each check defendant Overall wrote: "Full payment 49 Mercury 2 Dr. Mtr No. 9 C M————Title papers attached."

On August 23, 1949, defendant delivered the two checks to his agent, Leonard Stice. That night Stice took the train for St. Louis. The next day he appeared in the office of the Oakley Company. Stice inspected the two cars, and took their motor numbers. He then wrote on the back of the two checks in the blank spaces after "9 C M," the following: On one check, "252489 Blue," on the other, "230967 Green."

In the telephone conversation between defendant and Sanders (representative of the Oakley Company) it was understood that both cars were to be equipped with white sidewall tires. Upon inspection, Stice found that one of the cars did not have those tires. By reason of that fact an adjustment was made. The Oakley Company issued its check in the amount of $15, payable to the Mo-Kan Auto Sales and delivered the same to Stice.

Bills of sale covering the two cars were executed by the Oakley Company. One shows the automobile described therein was "Sold to Bernadine Cooper", the other to "Georgia Barton." This was done at defendant's request. Bernadine Cooper (Owen) was his bookkeeper and Georgia Barton was a "girl friend" of the bookkeeper. Defendant's counsel at the trial admitted "this was his (defendant's) deal, and his, entirely."

Stice delivered the two checks sued on to the Oakley Company. The latter in turn delivered possession of the two cars to

Stice. He fastened the cars together and started to drive them to Kansas City. When he got within a few miles of his destination he ran the cars off the highway into a ditch and wrecked them.

On August 25, 1949, defendant notified the bank upon which the checks were drawn to dishonor them. The bank complied with his request and thus the basis for this suit was laid.

Defendant's first contention is that the court erred in not directing a verdict for him at the close of plaintiff's evidence, his claim being that he "never acquired any title to the automobiles."

It is apparent that defendant recognizes that: "It is a well-settled rule that the loss of goods destroyed by accident falls upon him who at the time holds the title." Turner Looker Co. v. Hindman, 298 Mo. 61, 66, 250 S.W. 388, 389.

In the instant case, not only was possession of the cars delivered to defendant's agent, Stice, but bills of sale covering them were executed by the Oakley Company, plaintiff's predecessor.

█ It was early held in this State that: "As a matter of law a bill of sale is not necessary to pass the title to personal property. A delivery of the possession of goods under a contract to purchase passes the title, and from that time they belong to the vendee and are his risk." Gatzweiler v. Morgner, 51 Mo. 47, 49. See also W. W. Kendall Boot & Shoe Co. v. Bain, 46 Mo. App. 581, 592 and Poplin v. Brown, 200 Mo.App. 255, 265, 205 S.W. 411.

█ Under the common law, no *present* delivery was essential to the passing of title in the sale of a chattel. As said in the case of Wheless v. Meyer-Schmidt Grocer Co., 140 Mo.App. 572, 585, 120 S.W. 708, 712: "* * * the sale may be complete and the title pass to and vest in the purchaser even though no present delivery is had. It is true, too, that when the seller has performed all that is required of him under the terms of the contract, and de-livery alone remains to be made, the property vests in the buyer so as to subject him to any risks which may thereafter befall the subject-matter of the sale. It therefore appears that the sale may be perfect, title pass, and the property be at the risk of the purchaser, and yet the vendor retain possession and have a complete right to retain possession until the price is paid and to compel payment before delivery." To the same effect is the holding in Estis v. Harn-den, 153 Mo.App. 381, 385, 134 S.W. 43 (citing cases).

Our statutory law pertaining to the sale of *new* automobiles by a dealer is found in Section 301.200 RSMo 1949, V.A.M.S., which provides: "Dealers shall execute and deliver bills of sale in accordance with forms prescribed by the director of revenue for all new cars sold by them."

In the instant case bills of sale for the two cars were executed by the business manager of the Oakley Company on behalf of that company. The manager's signatures were made under oath before a notary. Both instruments bear the latter's signature and seal. These bills of sale show a present transfer of the automobiles, specifically describe them, and recite the consideration paid. They contain every element deemed essential under all of the decisions that we have been able to find. It was not disclosed by either the pleadings or the proof that the director of revenue had prescribed forms of bills of sale for use by dealers in new cars. There was evidence, however, showing that the director had issued certificates of title upon presentation of bills of sale similar in form to those here involved.

█ The evidence shows that after the bills of sale were executed, they were, in compliance with defendant's *express written direction*, attached to the two checks. The cars were then delivered to defendant's agent, and, while in the latter's possession, they were wrecked. We hold as did the learned trial court, that defendant, having had both the title and possession, should bear the loss.

■ It should be pointed out that the situation appearing in the case at bar is entirely different from those shown in the many cases construing what is now Section 301.210 RSMo 1949, V.A.M.S. That section says that the sale of any motor vehicle which has been *registered,* "without the assignment of such certificate of ownership, shall be fraudulent and void." That section applies to the sale of "used", and *not* "new" motor vehicles such as are here involved. See Vetter v. Browne, 231 Mo. App. 1147, 85 S.W.2d 197.

Defendant's next point is that the court erred in directing a verdict for plaintiff because "plaintiff's title and right to sue upon the checks were in issue."

Plaintiff introduced voluminous records to show its acquisition of the assets of the Oakley Company, including the checks sued on. Defendant made no objection to the introduction of any of this evidence. These documents were identified and introduced through Mr. Emig, business manager of both the Oakley and Mallory Companies. Defendant's counsel did not ask Mr. Emig a single question on cross-examination relative to plaintiff's title to the checks and the assignment thereof by the Oakley Company to plaintiff. From the entire record it is clear that defendant did not seriously controvert plaintiff's right to sue upon the checks.

■ In the case of Furth v. Cafferata, Mo.App., 240 S.W. 476, many cases are cited in support of the court's holding in an action by an indorsee on a note that it was not error to direct a verdict for plaintiff without submitting to the jury the question of whether the note had been endorsed and delivered to the plaintiff, where the evidence showed that it had been, and that this was not "really controverted." We rule the point against defendant.

■■ Defendant makes two additional points. The first we need not consider. It is not specific, and thus does not comply with Rule 1.08 of our Supreme Court, 42 V.A.M.S. The second is not preserved for review inasmuch as it was not called to the trial court's attention in the motion for new trial.

The judgment is affirmed.

MAUGHMER and WEIGHTMAN, Special Judges, concur.

DEW, P. J., and CAVE, J., not participating.