Cook, J.,
delivered the opinion of the Court.
This was an action of covenant in the Court below, by the appellant against the appellee, upon a covenant respecting a then existing partnership between them, wherein it was stipulated and agreed between the parties, that the business of the concern should thereafter be transacted in the name of the said Paul only, hut that the interest of the parties, in all the dealings that had previously taken place under said partnership, and in all the goods that had previously been sold, and in all future sales of said goods, should remain as theretofore, until a final settlement between them. Said Paul agreed to go to the eastward, to make further purchases, as soon as practicable, and to purchase at least double the amount which had been, or might be advanced to him by said Edwards, before his (said Paul’s) departure; one half of which purchases (provided they did not exceed one-third more than the amount “above” specified,) were, from the date of the respective purchases, to be considered as belonging to said Edwards, and at his risk. The whole of the goods, so purchased, were to be transported to St. Louis “ by the said Paul,” and at tile election of the said Edwards, to be equally divided between the parties, or remain in common *25 stock, on the terns of the then existing partnership; but if the goods so to he'purchased, should be divided, then the goods, then on hand, were also to be divided; « and upon final settlement, either party falling in debt to the other,” should pay as therein stipulated.
The declaration contained three counts; the first assigned a breach, that defendant refused to make final settlement with the plaintiff; the second alledges a final settlement, and that the defendant fell in debt to the plaintiff, and assigns a breach, that he refused to pay, &c.; the third is similar to the first, with an additional averment that the plaintiff had paid the defendant’s proportion of the expenses of transportation and breach; that defendant had not borne his proportion of the said expenses. Each count in the declaration, after setting out the covenant recites, that, « whereas, after the making of said covenant and agreement above mentioned, viz. on,” &.C., the said Paul being taken sick, so that he could not proceed to the eastward to make purchases, «it was then arid there agreed between the said parties, that Duff' Green should go on for that purpose, and that, in other respects, their said agreement should remain as before made,” with an averment that said Green did go to the eastward and malee purchases, &c. To this declaration the defendants, after craving oyer of the covenant, demurred generally, and assigned several causes of demurrer, the most important of which are, that the agreement given in oyer contains no covenant to make final settlement 5 that the subsequent agreement recited in the declaration, is not alledged to he in writing under the seals of the paities, and that the action is founded partly on deed and partly on parol agreement. On the demurrer, the Circuit Court gave judgment for the plaintiff) upon that count which charged the defendant with the non-payment of the amount found due on settlement; and as to the other counts, same judgment for the defendant. The point most relied on by the appellant’s counsel, is the supposed error of the Court belo.w, in sustaining the demurrer to the first and third counts of the declaration; and it is contended by the counsel for the appellee, that the judgment on the demurrer ought to have been for the defendant, as to the whole declaration. If the ease rested on the fifth cause of demurrer, “ that that agreement contains no covenant to malee final settlement between the parties,” but little difficulty would present itself. The parties have stipulated that if the new goods should he divided, then the old goods should also he divided; and upon final settlement, the party falling in debt to the other’, should pay, &c. At the time the agreement was entered into, the old goods mentioned appear to have been the only stock of the concern; and a stipulation to divide them at a particular time, or on the happening of a particular event, (as in this case,) and, upon final settlement to pay, &e., seems necessarily to imply a covenant to make final settlement on such division. In support of the declaration it is contended that the object of the agreement was to vest a certain amount of funds in merchandise, and that the covenant by Paul to do it, is no more than an undertaking on his part to have it done, which was as well fulfilled by Green’s going to the eastward and pm-chasing and bringing the goods to St. Louis, as if Paul himself had done it, because quifacit per almmfacit per se. It is, however, believed that the general application of this maxim, is to the acts of a parly which tend to charge him; and that it does not generally apply to such acts as the party stipulates to perform in person, or to cause to he performed by another person, expressly named. If, however, the act to be performd were of a nature in nowise requiring skill and judgment in business, or personal enterprise and diligence, and when performed would he’ equally beneficial *26 to the party, no matter what means were employed in effecting it, a construction which would overlook expressions in the agreement relative to the means, and look alone to the object, would appear much less exceptionable. The purchase of goods, however, in this case, can only be considered as a means of effecting the principal object of the parties, They have stipulated that an amount of capital, at least equal to double the amount which might be advanced by Edwards, should be employed in purchases; that those purchases should be made in certain markets, and Rene Paul should make them. The object of the parties then, clearly, was profit on the capital to be employed; and the means to be employed in effecting that object, were in the understanding of the parties alike material. It might, with equal plausibility, bp contended that the object of the parties being to lay out a sum of money for goods, it could as well be done in one market as another; and that Paul would have fulfilled his part by making the purchases in St. Louis, although he had expressly covenanted to go to the eastward for that purpose. The remaining question for the consideration of the Court, and indeed the only one that assumes a yery important aspect in the cause, is, whether the subsequent agreement recited in the declaration became a part of the covenant, and could be declared on as such ? The case of Littler, and another, against Holland, 3 Term Reporte, 590, shews, that proof of performance under such subsequent agreement, is not admissible in support of an action upon the agreement under seal. In that case the plaintiff had covenanted to build two houses by a day mentioned, for a given sum; the declaration alledged performance within the time limited. On the trial, proof that by a parol agreement, subsequent to the covenant, the time had been enlarged, and the houses had been finished within the enlarged time, was held not to support the declaration, and rejected; and in the case of Gregson v. Harrison (note a, to the above case,) a similar decision was made. But the case of Brown v. Goodman, (note b. to the case of Littler, &c., v. Holland,) goes the full length in deciding this case. That was an action of debt on a common arbitration bond, in which the time was limited for the arbitrator to make his award; the declaration, (as in this case,) recited a subsequent agreement of the parties, enlarging the time, and averred that within the enlarged time the award was made. On demurrer to this declaration, Lord Kenyon said the question was not then to he discussed, whether the party had not some (34) remedy, but whether his remedy lay on the bond. To determine which, the Court must look to the bond, and there it appeared that the defendant had bound himself to stand to an award, if made within a given time, but that could never extend the penalty to an award made after that time, under a new agreement; to Which the other Judges assented, and judgment was given for the defendanf. And where parties agree in certain and express terms, they are bound by such express agreement; as when the lessee of a coal mine covenanted to pay a moiety of all such sqrns of money as the coals there raised might sell for, at the pit’s month, it was held he was not liable for any part of the money arising from the sale of coals sold elsewhere, because the parties had contracted in terms certain and unambiguous, and were therefore not a subject of construction: Gerard v. Clipton, 7 Term Reports 676; Clifton v. Walmesly, and another, 5 Term, 567.
In order to arrive at a correct conclusion on this question, no means have been omitted to examine authorities — both English and American decisions, as far as they could be procured, have been examined and carefully compared. The English decisions, so far as we have been able to consult them, almost uniformly support the *27 cases cited. Among the American adjudications, on this point, there is some variety under some circumstances, and in some particulars the Courts of the State of New York have received evidence of parol agreement, to control the operation of deed; yet, except under particular circumstances, the Supreme Court of that State has recognized the correctness of the English doctrine on this point. The Cofift of Appeals of Yirginia, at one lime, admit no general riile either Way; and in a later case, say, the general rule is, that parol evidence is inadmissible to explain a deed; and that in each particular case the question is, whether a relaxation of the general rule is inadmissible j and in Blairgrove’s Ex’r. v. Blairgrove, 1 Washington, 170, it is held that parol agreement may alter the terms of an agreement under seal, and become the foundation of an action. There are many other American adjudications on this question, the greatest number of which corroborate the cases cited in sup-port of this decision. We have not been able to find any which fully contradict them, and although this rule of decision may operate injuriously in this or any other given case, this Court must conform to settled and established principles of adjudication, and more especially such as form a pdrt of the cdmmon law of England, which, by legislative enactment, is made the rule of decision here.
It is the opinion oí the Court, that on the general demurrer, the judgment of the Circuit Court should have been for the defendant, and as the final judgment in that Court was for the party, who, hy law, was entitled to it in a previous proceeding iii tire cause, this seems no cause of reversal.
The judgment must therefore be affirmed, With costs.