BERNERO, Appellant, v. McFARLAND REAL ESTATE COMPANY, Respondent.

**St. Louis Court of Appeals, December 1, 1908.**

1. **EASEMENTS: Definition:** Affirmative and Negative Easements.   An affirmative easement is one which entitles the owner of the dominant estate to make active use of the servient tenement.   A negative easement is the right of the owner of the dominant tenement to restrict the owner of the servient tenement in the exercise of general and natural rights of property; easements of this character are rights of light and air.

2. ————: **Construction: Circumstances.**   In cases of ambiguity in the grant of an easement, a doubt should be resolved in favor of the grantee and against the grantor, but that should not determine the question where other circumstances throw light upon it.   Parol evidence is admissible to show the surrounding circumstances for the purpose of such interpretation.

3. ————: ————: ————.   Where the owner of a lot containing two buildings sold a portion thereof containing one of the buildings and in the conveyance provided that a strip of ground adjoining the part conveyed should "forever remain vacant as an easement between the property of the grantor and grantee," and where it was shown that the strip of ground described was constructed and in use at the time of the conveyance as a driveway, and that buildings were constructed with reference to the accommodation of the property adjacent such driveway and after the conveyance it was used for several years as a driveway, an affirmative easement was contemplated, and an obstruction of the driveway by the owner of the servient tenement could be enjoined.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED (*with directions*).

*Virgil Rule* for appellant.

*Albert C. Davis* for respondents.

NORTONI, J.—This is a suit for injunctive relief. The plaintiff filed her bill in equity, seeking to restrain the defendant from interfering with and interrupting her free use of an easement on defendant's lot of ground and immediately adjacent to that of the plaintiff. Upon a hearing the court found the issues for the defendant, denied the relief prayed for, and plaintiff appeals. The facts out of which the controversy arose are as follows. On March 9, 1899, the defendant was seized and possessed of a lot of ground in the city of St. Louis, situate at the southeast corner of Taylor and Maryland avenues in city block No. 3899. This lot had a front of 123 feet and 2½ inches on Maryland avenue, by a depth southwardly of 213 feet to a public alley in said block. Prior to that time, there had been erected thereon two hotel buildings, one known as the Westmoreland Hotel, fronting to the north on Maryland avenue, and the other, the Annex, which was situate to the south of the Westmoreland Hotel and fronted to the west on Taylor avenue. Between the two buildings there was an open space of forty feet from north to south, running lengthwise from east to west. On the date mentioned, March 9, 1899, the plaintiff's husband purchased from the defendant a portion of said lot of ground, on which was situate the Westmoreland Hotel. The defendant retained the portion of the lot of ground on which was situate the Annex. The portion of the lot purchased by the plaintiff's husband is described by metes and bounds as follows: commencing at the northwest corner of said lot, that is to say, at the southeast corner of Taylor and Maryland avenues, and running thence east along the

south line of Maryland avenue, 123 feet and 2¼ inches; thence south on a line parallel with Taylor avenue, 213 feet to the public alley; thence west along the north line of said public alley and parallel with the south line of Maryland avenue for a distance of 23 feet and 2¼ inches; thence north a hundred feet on a line parallel with the east line of Taylor avenue; thence west a hundred feet to a point on the east line of Taylor avenue 113 feet south of the southeast corner of Taylor and Maryland avenues; thence north along the east line of Taylor avenue to the point of beginning, to wit: the southwest corner of Taylor and Maryland avenues, or the northwest corner of said block. As stated, the Westmoreland Hotel was situate upon the lot of ground above described. The defendant retained the southwest portion of the entire lot, being a parcel of ground a hundred feet square on which was located the Annex. Between the hotel building and the Annex, there is an open space forty feet in width running lengthwise east and west. Of this, fifteen feet thereof immediately south of the Westmoreland Hotel and adjacent to the line dividing the two properties, as described in the deed, was parcel of the ground conveyed to the plaintiff's husband, while twenty-five feet thereof on the north side of the Annex and immediately adjacent to and south of the line dividing the two properties was parcel of the lot of ground retained by defendant, on which was situate the Annex. The evidence shows that at this time there was in process of construction an addition on the south side of the east end of the Westmoreland Hotel, to be occupied as a kitchen and butcher shop. On the south end of the twenty-three foot strip of plaintiff's lot, running to the public alley and adjacent to the line dividing plaintiff's property from that of defendant's, there had been constructed a coalshed. The accompanying plat will disclose the location of the Westmoreland Hotel, the kitchen, butcher shop, coal-

shed and the Annex, the vacant space between the Westmoreland Hotel and the Annex, the dividing lines of the two properties, and a strip of ground marked "Ten foot cinder road" over which is the easement involved.

Bernero v. Real Estate Co.

MARYLAND AVE.

123 ft. 2¼ in.

N
W ─┼─ E
S

113 ft.

WESTMORELAND HOTEL

TAYLOR AVE.

15 ft.

10-foot Strip Cinder Road

15

Kitchen

Butcher
Shop

10-foot Strip Cinder Road

ANNEX

100 ft.

Shed

ALLEY

The conveyance employed in passing title from defendant to plaintiff's husband was a general warranty deed containing the usual words of grant, etc. After having fully described the property conveyed, the grant touching the easement proceeds in the following language. "It is also agreed and understood by and between the parties hereto that a ten foot strip of ground belonging to the grantor herein adjoining on the south and west the property hereby conveyed shall forever remain vacant as an easement between the property of said grantor and grantee, his heirs and assigns. Said strip of ten feet in width shall begin at a point in the east line of Taylor avenue 113 feet south of the south line of Maryland avenue, and extend east and parallel with Maryland avenue one hundred feet, thence south and parallel with Taylor avenue one hundred feet to the north line of a public alley running east and west through said block." It will appear by reference to the plat that the ground over which the easement is granted is parcel of the lot retained by defendant and lies immediately adjacent to the south line . one hundred feet in length of the Westmoreland Hotel property, and the west line, one hundred feet in length, of the twenty-three feet and 2¼ inches in the rear of the Westmoreland Hotel granted to plaintiff's husband, and on which was situate the Westmoreland Hotel kitchen, butcher shop and coalshed. The evidence tends to prove that at the date the grant was made there had been some cinders placed along this strip of ground mentioned as an easement, to the end of making a roadway thereof, and that those engaged in delivering supplies to the Westmoreland Hotel, were in the habit of driving over the same. It seems it was so used for several years thereafter. The plaintiff's husband having departed this life, devised the property above described to her, and of course, she succeeded to whatever rights he had as to the easement.

The case discloses that the defendant forbade the plaintiff and her tenants from driving upon or passing over the easement described, and to the end of preventing its use as a driveway, stretched a wire across the same, preventing entry thereon. The plaintiff insists that she and her tenants have a right to drive upon and pass over the easement for the purpose of furnishing supplies to the hotel property and that the act of defendant above mentioned, forbidding and preventing such use, is in violation of her rights. On the other hand, it is insisted by the defendant that no such right was granted or contemplated by the deed. It is said the strip of ground mentioned was to remain vacant as an easement for the purpose of light and air only. The question for decision, therefore, is whether the easement granted is affirmative or negative in its character. An affirmative easement is said to be one which entitles the owner of the dominant estate to make active use of the servient tenement, or to do some act which, in the absence of the easement, would be a nuisance or a trespass. Such easements are rights of way, etc. [10 Amer. and Eng. Ency. Law (2 Ed.), 405; Cale on Easements, 23; 2 Washburn, Real Property (5 Ed.), 314.] A negative easement is a right in the owner of the dominant tenement to restrict the owner of the servient tenement in respect of the tenement in the exercise of general and natural rights of property. Easements of this character are rights of light and air, etc. [10 Amer. and Eng. Ency. Law (2 Ed.), 405; Pitkin v. Railroad, 2 Barb. Ch. (N. Y.) 221-225; 47 Amer. Dec. 320; Day v. Railroad, 31 Barb. (N. Y.) 548; Washburn, Real Property (5 Ed.), 314.]

The solution of the question presented must be determined by an interpretation of the language employed. It is stipulated in the grant that the ten-foot strip of ground mentioned, "shall forever remain vacant as an easement between the property of said grantor and

grantee, his heirs and assigns." It is clear from the language employed that the right granted is attached to and is parcel of the dominant estate and inures to subsequent grantees. It is clearly appurtenant to the land and passes to the plaintiff as the devisee of her husband, or to whomsoever the title of the dominant estate shall eventually come. [Morton v. Thompson (Vt.), 38 Atl. 88; Hopper v. Barnes, 45 Pac. (Cal.) 874; Lidgerding v. Zignego (Minn.), 80 N. W. 360; 10 Amer. and Eng. Ency. Law (2 Ed.), 403.] The material words for interpretation in the present instance are, "shall forever remain vacant as an easement." There can be no controversy as to the words, "shall forever remain vacant." Their import is clear and unambiguous. The purpose for which the vacancy is stipulated is "an easement." This is not so clear. The word "easement" includes a multitude of rights. In the broad significance of the term, an easement is said to be a "privilege without profit which the owner of one neighboring tenement has of another, existing in respect of their several tenements by which the servient owner is obliged to suffer or not to do something on his own land for the advantage of the dominant owner." [10 Amer. and Eng. Ency. Law (2 Ed.), 398.] Of course, the easement may be, as above stated, affirmative in its nature, permitting an active use of the servient tenement to the benefit of the dominant estate, or it may be negative only as for the right of light and air, in which case an active use is not allowed. The controlling canon for the interpretation of deeds, if unambiguous, is to ascertain the intention of the grantor from the words employed. [Carr v. Lackland, 112 Mo. 442-460; Patterson v. Missouri Glass Co., 63 Mo. App. 173-177; 17 Amer. and Eng. Ency. Law (2 Ed.) 3, 4.] This rule of construction is without influence here, for the reason the words, "as an easement," when considered in respect of the subject matter, are highly ambiguous,

for indeed, of themselves, they may signify either an
affirmative or a negative easement, as above indicated.
In such circumstances, other principles interpose and
different rules of construction obtain, to the end of
enabling the court to deduce the intention couched in
words of ambiguity. Although, because of its strict-
ness, it should not be resorted to until the application of
other rules have failed to elucidate what was intended,
the doctrine obtains in cases of ambiguity in a grant
other than public, that the doubt should be resolved in
favor of the grantee and against the grantor. It pro-
ceeds upon a principle of natural justice; because, first,
it is said that the grantor is presumed to have received
a valuable consideration for the grant; and second,
because the natural instinct of self-interest always im-
pels the grantor to curtail the grant to the full extent
permitted. [Biddle v. Vandeventer, 26 Mo. 500; 17
Amer. and Eng. Ency. Law (2 Ed.), 14; Dunn v. Eng-
lish, 26 N. J. L. 126.] However, the solution of the
present controversy by the application of this principle
alone might entail an unjust result, for even after con-
struing the ambiguous language against the interests of
the grantor, it is not clear, from that alone, that he in-
tended to grant an affirmative easement and permit the
establishment of a driveway forever across the prem-
ises. Be this as it may, in cases of such ambiguity in
language, it is permissible to look to the facts and cir-
cumstances which surrounded the parties and subject-
matter and attended upon the use of the words employ-
ed by the grantor. [Long v. Timms, 107 Mo. 512; La-
clede Const. Co. v. Moss Tie Co., 185 Mo. 25, 52; Hopper
v. Barnes (Cal.), 45 Pac. 874.] Of course the principle
obtains alike to ambiguity in deeds creating an ease-
ment. [10 Amer. and Eng. Ency. Law (2 Ed.), 411;
Jones v. Delassus, 84 Mo. 541.] In order to elucidate
the matter of intention in such cases, resort may be had
to parol testimony, to the end that the court may be

indued with the knowledge the parties had of the situation and thus directed to the obvious purpose of the grant; in this case, the use of the subject-matter granted. [Dunn v. English, 23 N. J. L. 126; Agne v. Slitsinger, 96 Iowa, 181, 186; O'Neil v. Holbrook, 121 Mass. 102; Perry v. Snow, 165 Mass. 23; Riggs v. Meyer, 20 Mo. 239; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 25, 62.] And so too, parol evidence may be given to show the conduct of the parties with respect to the subject-matter of the grant, contemporaneous with and recently after its execution. Such contemporaneous exposition by the conduct of the parties tends, with great force, to elucidate the intention concealed in ambiguous words. [Jones v. Delassus, 84 Mo. 541; Laclede Const. Co. v. Moss Tie Co., 185 Mo. 73; Price v. Evans, 26 Mo. 30, 49; 17 Amer. and Eng. Ency. Law (2 Ed.), 23, 24.] An examination of the proof discloses a roadway had been established on the strip of ground encumbered by the easement recently before the date of the deed, and continued for many years thereafter. On January 11, 1899, or about two months before the plaintiff's husband purchased the property, defendant leased the entire premises for hotel purposes to the Girardi Hotel Company. Mr. Girardi and members of his household, gave evidence to the effect that the ground in the rear of the Westmoreland Hotel, between it and the Annex, was wet and muddy; that cinders had been placed along the strip of ground mentioned for the purpose of making a roadway to enable the delivery of goods and supplies in the rear of the hotel building, and that this roadway was then being used for that purpose. It further appears that the Girardi Hotel Company erected the kitchen and butcher shop on the rear of the south side of the east end of the Westmoreland Hotel, the west side of which abutted within a few inches of that portion of the ground encumbered by the easement running north and south. This structure was

nearly completed at the time the plaintiff's husband purchased the Westmoreland property. Doors and windows were made to open upon the easement. After the Girardi Hotel Company took possession of the Westmoreland Hotel, and immediately prior to the execution of the deed conveying the same to the plaintiff's husband, Mr. Girardi caused the roadway to be reconstructed along the ground encumbered by the easement. It is said that some portions of this roadway he caused to be filled with cinders two feet in depth. An employee of a grocery company, which furnished goods to the hotel, testified that he drove over this cinder driveway in delivering goods to the hotel every day during the months after the Girardi Hotel Company took possession, and continued to do so for years thereafter. It also appears that the coalshed in the rear of the Westmoreland Hotel and adjacent to the alley, was constructed by Mr. Girardi abutting upon the easement immediately prior to the purchase of the property by plaintiff's husband. It seems that the coalshed obstructed access to the Westmoreland property from the alley except by passing over the ground encumbered by the easement. This showing of the condition at the time is not pointedly controverted on the part of defendant. The president of defendant hotel company and his wife gave evidence to the effect that the cinders then upon the roadway at the time Girardi took possession, which was two months before the purchase by plaintiff's husband, were inconsiderable in amount and only such as had been removed from the furnaces in the buildings. They said that after renting the hotel to Girardi, they remained there as boarders until about the first of February, at which time they removed to other quarters and paid no particular attention to the property thereafter for several years; that at the time they removed therefrom, the roadway over the ground now claimed as an easement, had not been

established other than by placing an inconsiderable amount of cinders thereon; and that the kitchen, butchershop and coalshed in the rear of the Westmoreland Hotel had not been constructed. Nothing appears in their testimony, however, to the effect that these buildings were not constructed and that the roadway was not established a month and nine days thereafter; that is, March 9, 1899, the date of the deed; while it does appear positively from the testimony of their tenant that the kitchen, butchershop, coalshed and roadway had all been constructed, or were in the process of construction and in use on that date. That these buildings were constructed with reference to the accommodation of a way for the property over the ground afterwards encumbered by the easement, is apparent. That the passway for wagon and team was constructed and in use at the time of the execution of the deed by which the easement was granted and was used for years thereafter for that purpose, is established almost beyond controversy. This use enlightens the matter of intention with respect to the contemplated easement. It is obvious the grant contemplated an affirmative easement appurtenant to the Westmoreland Hotel property to be used as a driveway as then and theretofore enjoyed.

The judgment will be reversed and the cause remanded with directions to the trial court to enter a decree awarding plaintiff the relief prayed for. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.