MINNIE McDANIEL, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

**St. Louis Court of Appeals, June 4, 1912.**

1. EVIDENCE: Written Contracts: Parol Evidence, When Admissible. Whether a written contract be ambiguous or not, parol evidence is admissible to show the collateral facts, and the circumstances under which it was executed, to enable the court to ascertain its subject-matter and thereby intelligently interpret it.

2. ———: ———: ———. Where the language of a written contract imports an ambiguity, parol evidence, tending to put the court in possession of the knowledge of the situation and subject-matter that the parties had, is competent; but direct evidence as to what the parties intended is not competent.

3. ———: ———: ———: Explaining Consideration Clause. The rule that parol evidence is inadmissible to show a contemporaneous parol agreement which tends to vary or contradict the terms of a written contract, does not obtain with respect to receipts, nor to the consideration clause of a contract or

deed, when such clause contains nothing more than a recital of fact; but the consideration clause of a deed may not be contradicted so as to defeat its operative words, and neither may the consideration clause of a contract or deed be contradicted if it is contractual in its nature and creates and attests rights according to the intention of the parties as gathered from the instrument.

4. RELEASES: Consideration Clause: Parol Evidence: Admissibility. The consideration clause of a release of a claim for personal injuries, which recited that "for and in consideration of the sum of $175, Dr. Brokaw's bill and St. John's Hospital bill" to her in hand paid by defendant, the receipt of which was acknowledged, plaintiff released defendant from liability for the injuries, was not contractual in its nature, as distinguished from a mere recital of fact pertaining to the consideration and receipt; and hence parol evidence was admissible to show that the bill of the surgeon referred to had reference to a parol agreement that plaintiff should be personally treated by such surgeon.

5. ———: Contracts: Performance: Delegated Performance. Where an agreement for the settlement of a cause of action for personal injuries provided that plaintiff should be taken to a certain hospital and should receive, at defendant's expense, the professional services of a certain expert surgeon, but instead, after she had been taken to the hospital, such surgeon's assistant, who was a young physician of only three years' practice, set and attended to her fractured hip and worked so unskillfully that there was no union of the bones, and the surgeon specified did nothing, except to inquire how she felt, and to pass his hand over her hip in the near proximity of the fractured bone on one occasion, there was no performance of defendant's contract; plaintiff being entitled to the personal services of the expert, which could not be delegated to another.

6. CONTRACTS: Personal Services: Delegated Performance. Where a contract stipulates for the performance of services by a particular person who possesses peculiar knowledge and skill with respect to the undertaking, such performance may not be delegated to another.

7. ———: Acceptance of Substituted Performance: Estoppel. Where one contracts for an article of a particular kind, and he is furnished with a similar article, which he voluntarily accepts, he is estopped from thereafter asserting the breach.

8. RELEASES: Contracts: Breach of Agreement to Furnish Specified Surgeon: Substituted Performance. Plaintiff, having sustained a fracture of the neck of the femur in an accident, defendant, as part of a settlement of her claim for damages, agreed that she should receive the services of an expert

surgeon, at its expense. Plaintiff was, in fact, however, treated by the surgeon's assistant in a hospital of defendant's choosing, during which time she suffered intense pain and was entirely helpless. She inquired several times for the expert, but was assured that she was all right, and was later discharged from the hospital without any union having been formed, due to the alleged unskillful treatment of the assistant. She was not competent to judge as to whether or not the fractured bone was properly set and the process of healing was going forward. *Held,* that plaintiff did not, as a matter of law, voluntarily accept the services of the assistant as and for those to be performed by the surgeon specified.

9. ———: ———: ———: ———: **Proximate Cause: Damages: Certainty.** Plaintiff, having sustained a fracture of the neck of the femur in an accident, defendant, as part of a settlement of her claim for damages, agreed that she should receive the services of an expert surgeon, at its expense. Plaintiff was, in fact, however, treated by the surgeon's assistant, and was finally discharged without any union of the fracture having been formed. In an action for the damages sustained as a result of the non-union of the fracture, alleged to have been caused by the failure of defendant to furnish plaintiff with the services of the surgeon specified in the contract, *held,* that the evidence warranted an inference that, had the surgeon specified treated plaintiff, instead of his assistant, a proper union of the bone would have taken place, and hence the damages were not so uncertain or difficult of ascertainment as to amount to a mere conjecture.

10. **DAMAGES: Contracts: Action for Breach: Certainty Required.** In proving damages, the law never insists on a higher degree of certainty than the nature of the case admits, and, in an action for the breach of a contract, damages may be recovered if there is sufficient certainty to satisfy the mind of a prudent and impartial person that they can be traced, within a reasonable probability, to the breach.

11. ———: ———: ———: **Instructions: Measure of Damages: Roving Commission.** In an action for damages for the breach of a contract to furnish expert surgical treatment for the reduction of a fracture of plaintiff's femur, she having been unsuccessfully treated by the expert's assistant, an instruction that the jury should assess plaintiff's damage, in case they found for her, at such sum as they believed from all the evidence in the case would fairly compensate her for the injury, if any, which she had sustained by defendant's failure to furnish her the personal care and services of the expert, was sufficiently specific as to the elements of damage to be considered, and was sufficient in its general scope.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest, T. M. Pierce* and *T. E. Francis* for appellant.

(1) There was no ambiguity in the contract of release sued upon; the consideration clause was not a mere receipt but *inter alia* was a contract to pay the bill of Dr. Brokaw; and the court therefore erred in admitting parol evidence to very and extend its terms so as to include an agreement to furnish the services of Dr. Brokaw. Jackson v. Railroad, 54 Mo. App. 636; Tate v. Railroad, 131 Mo. App. 107; Koons v. Car Co., 203 Mo. 227; Catalogue Co. v. Weber, 130 Mo. App. 646. (2) The court erred in refusing to direct a verdict, for the reason the contract of release was merely a contract to pay the surgeon's bill; and an action thereon would not lie for failing to furnish the services of the surgeon. See authorities cited under point 1. (3) Even though evidence to extend the terms of the release was competent, the court nevertheless erred in refusing to direct a verdict for defendant, for the reasons: (a) Because plaintiff admitted that Dr. Brokaw had, from time to time, visited and treated her at the hospital, and that his assistant treated her until she was discharged from the hospital, and the contract, even as varied and extended by parol evidence, did not stipulate for exclusive and continuous personal attention by Dr. Brokaw. (b) Because defendant would fully discharge its obligation under the alleged contract by merely employing Dr. Brokaw to treat plaintiff, which the case concedes was done; and if he thereafter failed to treat her, personally or at all, or improperly treated her, defendant would not be liable therefor. Haggerty v. Railroad,

100 Mo. App. 424. (c) Because plaintiff accepted the services of Dr. Brokaw's assistant as a compliance with the alleged contract, and such services, therefore, constituted performance, since what the parties to a contract accept as compliance is compliance, in the eye of the law, although different from the requirements of the contract. Bean v. Miller, 69 Mo. 384; Joplin v. Waterworks Co., 177 Mo. 496; Water & Light Co. v. Lamar, 140 Mo. 145; Wells v. Coal Co., 114 N. W. (Ia.) 1081; Lumber Co. v. Warner, 93 Mo. 374; Armstrong v. School Dist., 19 Mo. App. 462; Crawford v. Elliot, 76 Mo. 497; Estel v. Railroad, 56 Mo. 282. (d) Because plaintiff accepted the services of such assistant without complaint to defendant or demand made that it furnish the services of Dr. Brokaw, and plaintiff is, therefore, estopped to claim a breach of the contract, since if she had refused to accept, or notified defendant she was dissatisfied with, the assistant's treatment, defendant might have arranged to have Dr. Brokaw give her his personal and undivided attention. Authorities cited under subdivision c, supra. (e) Because, in order for the breach of the alleged contract to furnish Dr. Brokaw's services to be actionable, it was necessary for plaintiff to prove, either directly or inferentially, that she would have received a better result if such services had been furnished, and there was no evidence tending to prove or from which the triers could infer that this was a fact. The verdict affirming this to be true rests, therefore, upon guess-work, speculation and conjecture. Graefe v. Transit Co., 224 Mo. 252; Morgan v. Mining Co., 136 Mo. App. 241; Goransson v. Mfg. Co., 186 Mo. 300; Warner v. Railroad, 178 Mo. 125; 8 Am. & Eng. Ency. Law, p. 614, par. b. (4) Instruction No. 1, given at the request of plaintiff, is erroneous, (a) Because it submits as the predicate of liability the question as to whether plaintiff was damaged by reason of Dr. Brokaw not having personally treated her, when there

was no evidence warranting an inference that the result would have been any other or different had he done so. Authorities cited under point 3e, supra. (b) Because it does not state or define the elements of recovery, but allowed the jury to award plaintiff any damages they believed she had sustained and is, therefore, a "roving commission." Rhodes v. Lumber Co., 105 Mo. App. 279; Matney v. Grain Co., 19 Mo. App. 107; Hawes v. Stock Yards Co., 103 Mo. 60; Badgley v. St. Louis, 149 Mo. 122; Camp v. Railroad, 94 Mo. App. 272; Graefe v. Transit Co., 224 Mo. 273. (c) Because it allows a recovery for personal injuries, and damages for such injuries are too remote to be recoverable for the breach of a contract to furnish the services of a surgeon. Fontaine v. Lumber Co., 109 Mo. 55; Ijams v. Insurance Co., 185 Mo. 477; Wilson v. Weil, 67 Mo. 399; Turner v. Gibbs, 50 Mo. 556. (5) Instruction No. 2, given on the court's own motion, is erroneous, (a) Because it submits as the predicate of liability the question as to whether plaintiff was damaged by reason of Dr. Brokaw not having personally treated her, when there was no evidence warranting an inference that the result would have been any other or different had he done so. Authorities cited under point 3e, supra. (b) Because it permits a recovery if plaintiff would have received a better result had Dr. Brokaw treated her, thereby enlarging the issues, since the petition states that a fibrous union resulted and asks for damages because the union was not a bony one, while the instruction permits a recovery in the event the jury believed there was no union and that a fibrous union might have resulted from Dr. Brokaw's treatment. Roscoe v. Railroad, 202 Mo. 576; Gardner v. Railroad, 223 Mo. 289; Beave v. Railroad, 212 Mo. 331; Hesselbach v. City, 179 Mo. 505; Yall v. Gillham, 187 Mo. 393. (c) Because the direction to return a verdict if a better result might have obtained from Dr. Brokaw's treat-

ment is so indefinite as to amount to a misdirection. Graefe v. Transit Co., 224 Mo. 273; Dalton v. Redemeyer, 154 Mo. App. 196.

*Percy Werner* and *Everett W. Pattison* for respondent.

(1) It is a universal rule, often recognized by the courts of Missouri and other courts, that parol evidence is admissible to explain a writing, to show the mutual intention of the parties who made it, to show the facts and circumstances that gave it birth and the surrounding circumstances in the light of which it is to be read and the intent and meaning of the parties arrived at. Wheless v. Grocer Co., 140 Mo. App. 572; Strother v. Lumber Co., 200 Mo. 647; Wilson v. Wilson, 115 Mo. App. 641; Construction Co. v. Tie Co., 185 Mo. 25; Davis v. Tandy, 107 Mo. App. 437; Carney v. Water & Light Co., 76 Mo. App. 532; Viernow v. Carthage, 139 Mo. App. 276; Buster Brown Co. v. Furniture Co., 140 Mo. App. 707; Wilcox v. Baer, 85 Mo. App. 587; Matthews v. Westbrough, 134 Mass. 555; Caley v. Railroad, 80 Pa. St. 363; Indiana & V. R. Co. v. Reynolds, 116 Ind. 356; French v. Hayes, 43 N. H. 30; Smith v. Piano Co., 194 Mass. 193; Harten v. Loeffler, 212 U. S. 397. (2) Inasmuch as the release was wholly prepared by the defendant, and plaintiff had nothing to do with choosing the language in which it was clothed, the plaintiff should have all the right which the law gives her to prove what its real meaning is. And the release is to be, therefore, construed in accordance with the rule *contra proferentem*. Renshaw v. Insurance Co., 103 Mo. 595; Nelson v. Brodhock, 44 Mo. 596. (3) (a) If Dr. Brokaw had accepted employment from plaintiff personally, he would have been bound to give her the benefit of his personal skill and judgment, to give her his personal services. (b) The same rule must apply in this case

where defendant agreed to furnish plaintiff the professional services of Dr. Brokaw; so that it likewise became bound to furnish her his personal skill and judgment, his personal services. And even if Dr. Brokaw had absolutely refused to perform the services, this would not have released defendant from its obligation. These propositions are fully supported by the following authorities. Paul v. Edwards, 1 Mo. 30; Leahy v. Dugdale, 27 Mo. 437; Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 495; Imp. Co. v. Iron Works, 129 Mo. 222; Brown v. Railway Pass. Assn. Co., 45 Mo. 221; McClure v. Insurance Co., 4 Mo. App. 148; Hariston v. Sale, 6 Sm. & M. (Miss.] 634; Francois v. Ocks, 2 E. D. Smith (N. Y.) 417; Lathrope v. Flood, 63 Pac. (Cal.) 1007; Becker v. Jaminski, 15 N. Y. Supp. 675; Potter v. Virgil, 67 Barb. 578; Dale v. Lumber Co., 48 Ark. 188; Ballon v. Prescott, 64 Me. 305; Lathrop v. Mayor, 85 Mo. App. 355; Attee v. Fink, 75 Mo. 100; Smith v. Bank, 120 Mo. App. 527; Wilson v. Railroad, 11 Gill. & J. 58; Crozier v. Reins, 4 Ill. App. 564; Spalding v. Rosa, 71 N. Y. 40. (4) There was no acquiescence on plaintiff's part. Her testimony is that she asked for Dr. Brokaw and made efforts to have him attend her. It was for the jury to say whether her testimony was to be believed, and whether or not she acquiesced in the defendant's breach of its contract. And the jury have found that she did not. On this point of plaintiff's acquiescence, there is meat in that part of the opinion of Judge Christiancy which will be found on pages 132 and 134 of 22 Michigan (Gilbert v. Kennedy). (5) A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. Wakerron v. Mfg. Co., 101 N. Y. 205; Brennan v. Mfg. Co., 162 Fed. 472; Docker v. Somes, 2 Myl. & Keene, 674; Salinger v. Salinger, 69 N. H. 589; Taylor v. Bradley, 39 N. Y. 129; Stowell v. Ins.

Co., 20 App. Div. 188; Myers v. Railroad, 43 App. Div. 573; Shoemaker v. Acker, 116 Cal. 239; Railroad v. Staub, 7 Lea, 397; Pierce v. Coal Co., 173 U. S. 1; Gilbert v. Kennedy, 22 Mich. 117; Dunn v. Railroad, 81 Mo. App. 42; Schmitz v. Railroad, 119 Mo. 256; Telegraph Co. v. Railroad, 202 Mo. 656; O'Grady v. Bank, 106 Mo. App. 366; Mabrey v. Gravel Road, 92 Mo. App. 596; Dean v. Railroad, 199 Mo. 386; Huse v. Heinze, 102 Mo. 245; Goldman v. Wolff, 6 Mo. App. 490. (6) The instruction on the measure of damages is not erroneous. Allison v. Chandler, 11 Mich. 542; Pandjiris v. Hartman, 196 Mo. 539; Waddell v. Railroad, 213 Mo. 8; Wheeler v. Bowles, 163 Mo. 398; Minter v. Bradstreet Co., 174 Mo. 444; Smith v. Fordyce, 190 Mo. 1; Haymaker v. Adams, 61 Mo. App. 581; Parman v. Kansas City, 105 Mo. App. 691; Hufford v. Railroad, 130 Mo. App. 638.

NORTONI, J.—This is a suit for damages accrued on account of a breach of contract. Plaintiff recovered and defendant prosecutes the appeal. The contract declared upon and of which the breach is assigned lies in parol and obligates defendant to furnish plaintiff the services of a surgeon possessing peculiar skill and ability for the treatment of her injury which was received through the negligence of defendant street car company.

The first question for consideration relates to the propriety of showing this agreement by parol notwithstanding a contemporaneous writing between the parties remotely touching upon the subject-matter. The case concedes the full force and effect of the written instrument but proceeds as though the parol agreement declared upon is parcel of the consideration for which the written release was given and to this extent affirms the obligation vouchsafed in the writing.

Defendant owns and operates a street railroad in the city of St. Louis, and it appears that plaintiff was

seriously and permanently injured while a passenger on one of its cars. The injury received is said to be an intra-capsular fracture of the surgical neck of the femur. The morning after the injury defendant's chief claim agent called upon plaintiff to negotiate a settlement of her claim for damages against defendant company. Plaintiff was confined to her bed at the time. Considerable conversation ensued between her, her friend, Mr. Henry, and defendant's claim agent, touching the matter. Among other things, it is said that defendant's claim agent proposed as terms of a settlement that plaintiff should be removed from her boarding house to St. John's Hospital and there receive the treatment of Dr. A. V. L. Brokaw, a very distinguished surgeon, at defendant's expense. It was explained to plaintiff that Dr. Brokaw was a noted and skilled surgeon, employed by defendant to treat serious injuries and that the special skill available through him would largely compensate the damage suffered. After the negotiations had continued for a couple of hours, plaintiff agreed to accept defendant's offer of $175 in cash, the services of Dr. Brokaw and accommodations of St. John's Hospital at defendant's expense, and release it from further claim for damages touching her injury. Upon such agreement being reached between the parties, defendant's claim agent prepared the release by filling in certain blanks therein and plaintiff executed the same by affixing her signature thereto. It should be said in this connection, however, that the words, "Dr. Brokaw's bill and St. John Hospital bill" immediately after the numerals, $175, were interlined at the time by the claim agent in the release, which was as follows:

"For and in consideration of the sum of one hundred and seventy-five dollars ($175no), Dr. Brokaw's bill and St. John's Hospital bill, to me in hand paid by the United Railways Company of St. Louis, the re-

ceipt of which is hereby acknowledged, I, the undersigned, hereby fully and forever release, acquit and discharge the said United Railways Company of St. Louis, its successors and assigns, from any and all liability, now accrued or hereafter to accrue, on account of any and all claims or causes of action which I now or may hereafter have against said company, its successors or assigns, in any way arising from any and all injuries, losses and damages by me or my property sustained or received on or about May 4, 1906, through me being severely injured while alighting from a car of said company at or near Finney and Krum avenues, city of St. Louis, Mo., and I here declare that I fully understand the terms of this settlement and that I voluntarily accept said sum for the purpose of making a full and final compromise, adjustment and settlement of the injuries and damages above mentioned.

Witness my hand this 5th day of May, 1906.

(Signed)   MINNIE McDANIEL.

The foregoing release was signed by Minnie McDaniel in our presence after being read to her at length.

(Signed)   J. W. HENRY.
(Signed)   CHAS. B. HARDIN.''

It will be noted that the release contains no stipulation in terms to the effect that Dr. Brokaw was to give his personal attention to plaintiff's injury, though a slight inference to that effect is offered by the interlineation of the words, ''Dr. Brokaw's bill.'' But, as before said, the written release itself is not declared upon, for though it is set forth in the petition, the obligation asserted for a recovery is the parol agreement entered into contemporaneously therewith for the personal services and skill of Dr. Brokaw as parcel of the consideration for which the release was

given. It is averred that defendant breached such verbal agreement in this: that, though it removed plaintiff to St. John's Hospital and confined her there for several months, it omitted to furnish her with the services of Dr. Brokaw, and, instead, placed her in the charge of an inexperienced surgeon who failed to afford proper treatment for plaintiff's injury, in consequence of which a proper union of the fractured femur was not accomplished.

Over the objection and exception of defendant, plaintiff was permitted to prove the parol agreement declared upon in the petition, and it is urged that the court erred in this, for the reason the testimony introduced to that effect tended to vary and add an additional stipulation to a written contract which is unambiguous on its face. Though the release above set forth may be regarded plain and unambiguous in so far as it reveals an obligation to release defendant from damages on account of the personal injury, it is obvious that the recital relating to the payment of Dr. Brokaw's bill and St. John's Hospital bill may not be fully understood unless the court is advised as to the collateral facts and circumstances surrounding the parties at the time it was executed. From the mere reading of the release, no one could certainly determine what the parties had in mind with respect to a bill of Dr. Brokaw or St. John's Hospital. At the time this release was executed, Dr. Brokaw had afforded plaintiff no treatment whatever, neither was she under any obligations to St. John's Hospital, for she was not a patient therein. Obviously, then, the words touching these two bills pertained to some treatment by Dr. Brokaw and the accommodations of St. John's Hospital for the future. Whether a contract be ambiguous or not, it is always competent to introduce parol evidence to show the collateral facts and circumstances under which it was executed, for

the purpose of enabling the court to ascertain the sub-ject-matter and intelligently interpret the writing with reference thereto. [Darnell v. Lafferty, 113 Mo. App. 282, 88 S. W. 784; Wilson v. Wilson, 115 Mo. App. 641, 92 S. W. 145; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25, 62, 84 S. W. 76.] Where, how-ever, the language of the contract is not entirely clear but imports an ambiguity, though the parties may not be permitted to say in plain terms what was intended, parol evidence is competent, to the end that the court may be endued with the knowledge the parties had of the situation and the subject-matter and thus directed to the purpose intended by them. [Wheless v. Gro-cery Co., 140 Mo. App. 572, 120 S. W. 708; Benero v. McFarland R. E. Co., 134 Mo. App. 290, 114 S. W. 531.] So much of the testimony objected to as tends to show the situation of the parties, that plaintiff had received an injury, while a passenger on defendant's car, and that she owed no bill at that time to Dr. Bro-kaw, or to St. John's Hospital was competent in any view of the case, to the end of enduing the court and jury with the knowledge of the situation which the parties had at the time and thus enable them to intel-ligently understand the release.

But it is said so much of the evidence as tended to prove the parol agreement for the personal services and skill of Dr. Brokaw is incompetent for the reason it tends to vary and contradict the terms of the writ-ing then made, by affixing an additional stipulation to the contract. No one can doubt the general rule which forbids the showing of a contemporaneous pa-rol agreement which tends to vary or contradict the terms of a written contract, but the rule does not ob-tain with respect to receipts nor to the consideration clause of a contract or deed when such consideration clause evinces nothing more than the recital of fact. Defendant concedes this proposition to be true, but insists that the evidence tending to show the contem-

poraneous parol agreement is incompetent for the reason the written instrument of release reveals the consideration thereof to be a contractual one, and it is therefore said to be immune from parol attack identically as other written contracts are. The proposition of law thus asserted is sound doctrine, indeed, and if the predicate assumed were true in point of fact the whole matter would thereby be concluded. It is insisted by plaintiff that the verbal agreement for the personal services and skill of Dr. Brokaw was the principal consideration for which plaintiff executed the release, as her utmost desire at the time was a recovery in good form from her injury. And it is said it is competent to show such agreement as a part of the consideration for the release, for the consideration clause of the release here in review is not contractual in its nature. The rule is now firmly established that when a statement of the consideration in a contract or deed is merely formal it may be contradicted or explained by parol evidence. In such cases the consideration clause is not deemed an essential part of the instrument but instead is regarded as a mere recital of fact and as such may be contradicted. [See 6 Am. & Eng. Ency. Law (2 Ed.), 767; Jackson v. Chicago, St. P., etc. R. Co., 54 Mo. App. 636; Laudman v. Ingram, 49 Mo. 212.] However, the rule is subject to some exceptions; for instance, one may not be allowed to contradict a consideration expressed in a deed executed by him, to the end of defeating the operative words of the deed. [See Hollocher v. Hollocher, 62 Mo. 267.] Furthermore, when the statement of the consideration contained in the instrument leaves the field of mere recital and enters that of contract, thereby creating and attesting rights as shown by the intention of the parties to be gathered from the instrument, it is no longer open to contradiction by extrinsic evidence, for to permit it to be thus overthrown would infringe the rule affording immunity

from parol attack to written contracts. [See Jackson v. Chicago, St. P., etc. R. Co., 54 Mo. App. 636; Davis v. Gann, 63 Mo. App. 425; 6 Am. & Eng. Ency. Law (2 Ed.), 775.]

The difference between the statement of the consideration as a mere recital of fact and as a contractual stipulation is clearly illustrated by Judge ELLISON in Jackson v. Chicago, St. P., etc. R. Co., above cited, as follows: "Suppose the consideration in a deed should be: 'In consideration of the sum of one thousand dollars to be paid to me in beef cattle weighing not less than one thousand two hundred pounds each, at five cents per pound.' Would it be contended that a consideration thus expressed contractually could be orally shown to be other than as expressed? So in the case of M'Crea v. Purmort, 16 Wend. (N. Y.) 460, 30 Am. Dec. 103, where, though the consideration was expressed to be in money, it was held that it could be shown to be iron of certain quality; if the fact had been the reverse of this and the consideration had been stated to be of a certain quality and quantity of iron, would it have been competent to show, in contradiction of this, that it was to be a given sum of money? I think not, for the reason that the mere statement of a certain amount of money, without more, as the consideration, is inattentive recital, common in conveyancing, of a consideration in most general use. It is thus spoken of in the books and adjudications. But when this common form of expression, thus reciting a sum of money, the medium of exchange which is generally used as the consideration, is departed from, and an unusual provision inserted, thereby evidencing a contractual intention, it is as binding as any other contract. But money may also be contracted for as the consideration in a written contract. And when the intention to so contract is disclosed by the written instrument, no other or additional consideration can be shown. Thus, suppose that the consideration was

stated in the written contract to be 'one thousand dollars to be paid as follows: Two hundred dollars in six months from date without interest; four hundred dollars in twelve months from date with three per cent interest; and four hundred dollars in eighteen months from date with ten per cent interest from maturity; all to be secured by a mortgage' on certain described property. Could it be shown in contradiction to this that the consideration agreed upon was fifty head of cattle or an additional sum of money? Clearly not. The reason is that it has been contracted otherwise by the parties, and that contract has been reduced to writing." [6 Am. & Eng. Ency. Law (2 Ed.), 775.] From this it appears that if the consideration clause in the release is contractual in its nature, as distinguished from mere recital of fact pertaining to the consideration and receipt, the evidence of the parol contract for the personal services of Dr. Brokaw as a part of such consideration was improperly received, otherwise not. We see nothing contractual in the consideration clause of this release. It provides, "For and in consideration of the sum of $175, Dr. Brokaw's bill and St. John's Hospital bill to me in hand paid by the United Railways Company of St. Louis, the receipt of which is hereby acknowledged," and thus concludes. It is true the contract of release follows thereafter, but so much of the document as pertains to the consideration merely recites the receipt of $175, Dr. Brokaw's bill and St. John's Hospital bill as if in hand paid to plaintiff and acknowledges a receipt to that effect. Obviously, there is no contract contained in such clause when viewed in the sense of the reasoning of the law touching such matters, and, unless the consideration clause reveals itself to be contractual and reflects the intention of the parties to that effect, it is competent to either contradict or explain it by showing other and additional considerations as well. Releases of the character of that

involved here have been reviewed by courts of high authority heretofore and the same conclusions reached with respect thereto. It was. competent to show the parol agreement here declared upon as parcel of the consideration for the release and a recovery for its breach may be allowed, as will appear by reference to the following authorities which we deem to be directly in point. See Harrington v. K. C. Cable Ry. Co., 60 Mo. App. 223; Stewart v. C. E. & I. R. Co., 141 Ind. 55; The Penn. Co. v. Dolan, 6 Ind. App. 109, 119, 120, 121. See, also, as touching upon the same question, the opinion of the Supreme Court of the United States in Fire Ins. Assn. v. Wickham, 141 U. S. 564; Nedvidek v. Meyer, 46 Mo. 600; 6 Am. & Eng. Ency. Law (2 Ed.), 772, 773.

It is argued the court should have directed a verdict for defendant because it appears it furnished the services of Dr. Brokaw, who occasionally visited the room in which plaintiff was confined in St. John's Hospital. This argument involves the idea that the contract was one which might be performed by another surgeon in Dr. Brokaw's employ. It appears that, though plaintiff had suffered an intra-capsular fracture of the surgical neck of the femur, which is a most difficult injury to successfully treat, Dr. Brokaw at no time assumed personal charge of the case. Instead, a young physician in his employ, who had been in practice but three years, attempted to set the bone and adjust and maintain a Hodgen splint in proper position. It is said that to successfully treat such an injury the ends of the fractured bone must be brought in apposition and thus maintained by means of the Hodgen splint attached to the leg and thigh until a union of the fractured ends is knit. During the interim while the process of healing is on, the patient lies in bed with the foot to which the Hodgen splint is attached suspended in the air by a rope from the ceiling. Dr. Brokaw did not personally attempt to set the frac-

tured bone or adjust the Hodgen splint which plays an important part in inducing a proper union. After his young assistant had attempted to perform the operation, as he thought, he reported the fact to Dr. Brokaw. Dr. Brokaw dropped into plaintiff's room frequently while she was confined in bed and inquired as to how she felt. Upon several occasions he laid hold of the rope passing from the ceiling by which plaintiff's foot was suspended, and on one occasion passed his hand over plaintiff's hip in near proximity to the fractured bone. The evidence reveals that Dr. Klinefelter, the young assistant, had immediate, personal charge of the case throughout and reported the progress occasionally to Dr. Brokaw. However, plaintiff testified that though she frequently inquired from the nurses and attendants why Dr. Brokaw did not treat her, he did no more than merely visit the room and lay his hand upon the rope, which operated as a sling for her foot, and, as before said, upon one occasion passed his hand down over her hip on the fractured bone. It is entirely clear that the evidence tends to prove a contract for the personal services and attention of Dr. Brokaw in the matter of setting and treating the fractured bone. Beyond question, such was the inducement offered to and accepted by plaintiff at the time the contract was entered into, for it was because of the special skill and ability of this eminent surgeon that plaintiff consented to the arrangement. Defendant's claim agent represented the special skill and eminent qualifications of Dr. Brokaw to successfully treat such injuries and suggested, too, that a much better recovery would be effected by plaintiff if she were removed to St. John's Hospital and placed in his charge. Plaintiff says upon these representations and inducements she agreed to and signed the release. There can be no doubt that there are undertakings in which one party contracts for the personal services of another for his skill, knowledge, and expe-

rience. When, therefore, it appears the contract stipulates that the services shall be rendered by some particular person, possessing peculiar knowledge and skill with respect to the undertaking, because of the peculiar knowledge, skill and experience of such person, it implies the services are to be personally rendered and that the performance may not be delegated to another. [See Paul v. Edwards, 1 Mo. 30; Leahy v. Dugdale's Admr., 27 Mo. 437, 439; see, also, Lansden v. McCarthy, 45 Mo. 106; Boykin v. Campbell, 9 Mo. App. 495.] Obviously, it was competent for the jury to find that the contract required defendant to furnish plaintiff with the personal services of Dr. Brokaw, and not his inexperienced assistant, in an endeavor to bring the ends of the fractured femur in apposition, adjusting the Hodgen splint and the subsequent treatment thereabout.

It is urged that the case reveals performance of the contract by defendant and, therefore, a verdict should have been directed for it. It is said that though Dr. Brokaw did not personally perform the duties, in compliance with the obligation defendant assumed in the contract, plaintiff is nevertheless precluded from a right of recovery here as for a breach because she accepted the services of Dr. Klinefelter as and for compliance therewith. The principle invoked in this argument is one upon which the courts frequently act and declares in proper cases. The rule goes to the effect that where one contracts for some article of a particular kind and is furnished and accepts a similar article, without complaint, he is thereafter estopped from asserting the breach. However, in those cases where the principle properly obtains, there always appears the element of voluntary acceptance and free-will conduct on the part of the person estopped. Every precept of natural justice repels the suggestion that the facts here in judgment invite the application of this principle, to the end of denying the right of re-

covery as a conclusion of law. It may have been proper enough to submit this theory to the jury for a finding thereon to the effect that defendant had discharged the contract, if it be found that plaintiff had voluntarily accepted the services of Dr. Klinefelter instead of Dr. Brokaw as a full compliance therewith. But no such issue was framed in the case by instructions, and it is certain that we may not declare such result as a conclusion of law. Here it appears plaintiff was on her back, confined in a hospital of defendant's choosing, with a fracture of the femur and her limb suspended in a sling attached to the ceiling. The proof is that she suffered intense pain throughout the entire period and was entirely helpless. She inquired several times for Dr. Brokaw and was assured that she was all right. Certainly this plaintiff was not competent to judge as to whether or not her fractured bone was properly set and the process of healing going forward, and, no doubt, she supposed proper treatment was had and obtained throughout. It would be a harsh judgment, indeed, to assert as a conclusion of law upon these facts, that plaintiff's right of recovery is precluded for the reason she voluntarily accepted the substituted services of Dr. Klinefelter for those to be performed by Dr. Brokaw.

But it is argued the court should have directed a verdict for defendant, if, for no other reason, than because the damages sued for are so uncertain of ascertainment as to enter the realm of mere conjecture. This argument has furnished us a subject for much reflection and considerable anxiety as to a proper solution of the question presented. In considering it, however, it should be remembered that the requirement that the damages must not be uncertain is satisfied by a reasonable certainty in this respect. In other words, it is sufficient if there be such certainty thereabout as satisfies the mind of a prudent and impartial person that the damages sued for may be traced as a rea-

sonable probability to the breach of the contract. Then, too, the law, it has been well said, never insists upon a higher degree of certainty than the nature of the case admits. [See Allison v. Chandler, 11 Mich. 548; 8 Am. & Eng. Ency. Law (2 Ed.), 610, 611.] In almost every case the damages to be measured are more or less uncertain, to a considerable degree, but the question of uncertainty presented here relates to the cause of the damage rather than to uncertainty as to the measure or extent thereof. Therefore, if it may be said that the facts and circumstances in evidence are insufficient to suggest to a reasonably prudent, impartial man that the damages proved flow as a reasonable probability from defendant's breach of the contract, the argument is sound, otherwise the question was one for the jury. [8 Am. & Eng. Ency. Law (2 Ed.), 614, 615; Wakeman v. Wheeler, etc. Mfg. Co., 101 N. Y. 209.] The relevant facts touching this question are as follows: The evidence tends to prove plaintiff was about thirty years of age and possessed the full vigor of young womanhood. It appears she was a seamstress by occupation, energetic and accustomed to work at that avocation for her living. One witness said she was a woman of good nerve and several more attest the fact of her good health and vigor. With such a patient, it would seem that a proper union of the fractured femur should be provided in due course by the processes of nature had the operation of setting and splinting the same been properly effected. Especially is this true in view of the evidence of Dr. Boogher, which goes to the effect that he had had two perfect recoveries in which bony union had taken place in like fractures of the femur in persons of over seventy years of age. The proof is that after having remained in the hospital for several months plaintiff was discharged without any union of the bone whatever having been made. One of the experts says in his judgment neither a bony nor a fibrous

union of the fracture had taken place for the reason the ends of the fractured bone were not brought in apposition and maintained there as they should have been. Though some two or three years have intervened, plaintiff's limb is still unserviceable because of the non-union of the fracture. It appears that Dr. Brokaw was a surgeon possessing not only great skill but renowned, as well, for the efficacy of his cures with respect to difficult fractures. While on the other hand, the physician who actually attempted to place the fractured ends in apposition, adjust the splint and treat plaintiff throughout is shown to have been a young man of but three years' experience in his profession. We believe it was competent for the jury to infer from these facts that had plaintiff been treated by Dr. Brokaw instead of Dr. Klinefelter a proper union of the bone would have taken place, for if the evidence on her part is to be believed, her health and condition were most favorable to such a result. Such would seem to be a reasonable inference and not mere conjecture, especially in view of the evidence that two lik fractures had made perfect unions in persons over seventy years of age who were treated by Dr. Boogher. Though it be true that in suits for the breach of contract the damages should be traceable to the breach and appear to flow from it as a reasonable probability, it is not essential that they be shown as a certainty to follow from that cause. It will suffice if enough appears in the case to enable the jury to reckon such a result from the common experiences of life through the application of that degree of sense usually possessed by an impartial man of ordinary prudence. Though we have been unable to. find a case in point, we cite the following authorities as evincing sound reasoning upon the principles which appeal to our judgment as relevant to the case. Obviously, as said by the Supreme Court of New Hampshire, the mere fact that the finding rests upon probability only or is made

by drawing inferences from circumstantial evidence will not render it an imroper one. [Salinger v. Salinger, 69 N. H. 589; Pierce v. Tenn. Coal, etc. Co., 173 U. S. 1; Wakeman v. Wheeler, etc. Mfg. Co., 101 N. Y. 209.]

Plaintiff's instruction No. 1 directed the jury that, in event it found for plaintiff, "You will assess her damages at such sum as you believe, from all the evidence in the case, will fairly compensate her for the injury, if any, which she has sustained by defendant's failure to furnish her the personal care and services of Dr. Brokaw." Under this instruction the jury awarded plaintiff a recovery of $7500. It is argued this instruction is not sufficiently specific as to the elements of damage to be reckoned with in the case; in other words, it is said the instruction affords the jury a "roving commission" to find such damages as it might choose. The argument obviously overlooks the wording of the instruction, for in plain terms it requires the jury to make its finding from the evidence in the case, and, furthermore, it directs that the amount should be such as will "fairly compensate plaintiff for the injury, if any, which she has sustained by reason of defendant's" breach. It would be difficult on the facts in the record to formulate a more specific rule for the guidance of the jury, and the instruction appears to be sufficient in its general scope. Such being true, it may not be condemned as reversible error but will suffice in view of the circumstances of the case. In Browning v. Railroad, 124 Mo. 55, 27 S. W. 644, a suit under the wrongful death statute, the Supreme Court declared a general instruction given for plaintiff touching the measure of damages, which much resembles this one, to have been sufficient in view of the fact it contained no erroneous elements and appeared to be well enough in its general scope. The court said had defendant desired more specific directions touching the

matter, it should have requested instructions to that effect.

We have examined and considered the other instruction complained of and believe that upon a fair construction of the petition, it was well enough. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.